[No. 17097-7-III.   Division Three.   April 22, 1999.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*, v. ELADIO AVUNDES, *Respondent*.

*Christine O. Gregoire, Attorney General,* and *W. Stuart Hirschfeld, Assistant,* for appellant.

*Calbom & Schwab, P.S.C.* by *David L. Lybbert,* for respondent.

KATO, J. — The Department of Labor and Industries appeals a superior court judgment affirming an administrative order holding a farm worker's employment status was not "intermittent" for the purpose of computing time-loss compensation. The Department contends the Board of Industrial Insurance Appeals and the superior court improperly applied RCW 51.08.178(2). We affirm.

Eladio Abundes,[1] a 65-year-old farm worker, came to the United States in March 1993. He was injured on May 24, 1994, while he was working at Yorgesen Farms. Before his injury, he had worked at Yorgesen Farms for 50 days, starting on April 5, 1994. During that time, he worked 230 hours and earned $1,381.27. He worked 14 hours over three days at an hourly rate of $5. He was paid on a "piecemeal" basis for the remaining 216 hours. During the 47 days when he was working on a "piecemeal" basis, he earned an average of $6.07 per hour and $27.90 per day. He generally worked five hours per day, seven days per week.

The following table shows Mr. Abundes' work history:[2]

| Dates | Total hours | Gross pay | Hourly avg. |
|---|---|---|---|
| 3/10/93 - 3/25/93 | 94.5 hours | $598.10 | $6.33 |
| 4/2/93 - 4/6/93 | 18 hours | $88.20 | $4.90 |
| 4/14/93 - 6/24/93 | 320 hours | $1,636.89 | $5.12 |
| 6/93 | 36 hours | $255.50 | $7.10 |
| 6/93 | 33 hours | $181.50 | $5.50 |
| 6/28/93 - 7/31/93 | 186.25 hours | $1,026.79 | $5.51 |
| 7/1/93 - 9/30/93 | 40 hours | $210.00 | $5.25 |
| 7/1/93 - 9/30/93 | 32 hours | $340.00 | $10.63 |
| 8/4/93 - 8/6/93 | 14.5 hours | $87.00 | $6.00 |
| 8/19/93 - 8/21/93 | 20 hours | $110.00 | $5.50 |

[1]Although the Notice of Appeal and other pleadings spell the name "Avundes," the parties' stipulation spells it "Abundes." We use his apparent preference.

[2]Some date periods overlap because Mr. Abundes worked more than one job at a time. Also, some periods include days during which Mr. Abundes did not work.

| Dates | Total hours | Gross pay | Hourly avg. |
|---|---|---|---|
| 8/23/93 - 8/24/93 | 12 hours | $60.00 | $5.00 |
| 8/27/93 - 9/21/93 | 39 hours | $249.00 | $6.38 |
| 9/8/93 - 10/22/93 | 136 hours | $1,328.00 | $9.76 |
| 11/5/93 - 11/6/93 | 12 hours | $69.00 | $5.75 |
| 11/21/93 - 11/24/93 | 33.5 hours | $167.50 | $5.00 |
| 12/13/93 - 12/21/93 | 30 hours | $157.50 | $5.25 |
| 1/94 | 10 hours | $57.50 | $5.75 |
| 1/1/94 - 3/31/94 | 109 hours | $545.00 | $5.00 |
| 4/5/94 – 5/24/94 | 230 hours | $1;381.27 | $6.00 |

During 1993, Mr. Abundes worked a total of 1,056.75 hours. Until his injury in 1994, he worked a total of 349 hours.

Mr. Abundes did general farm work and was generally available during all seasons. He was available to work for each employer for as long as each specific job was available. It always was his intent to secure full-time work throughout the year.

After his injury, the Department determined Mr. Abundes was "an exclusively seasonal, part-time, or intermittent [worker] and is subject to wage averaging" pursuant to RCW 51.08.178(2).[3] Mr. Abundes appealed this determination to the Board of Industrial Insurance Appeals on stipulated facts. An industrial appeals judge reversed, holding:

Contrary to one's instinctive sense that this is precisely the

[3]Generally, time-loss benefits are based on a worker's monthly wages at the time of the injury. RCW 51.08.178(1). However, if the employment is "exclusively seasonal" or if the worker's "relation to his or her employment is essentially part-time or intermittent," the monthly wage is an average of a representative 12-month period preceding the injury. RCW 51.08.178(2). The Department contends application of RCW 51.08.178(1) sets Mr. Abundes' monthly wage at $864.90, even though his monthly average since coming to the United States was $577.62 and his monthly average during 1994 was $413.29.

type of employment which is "essentially intermittent" within the meaning of the statute, it is not. General farm labor is not essentially intermittent or part-time. *In re Alfredo F. Lomeli*, BIIA Dec. 90 4156 (1992). Work which requires a worker to establish serial employment "should be viewed as essentially full-time." *In re Ruth A. Hopkins*, Dckt. No. 90 5569 (March 13, 1992) (construction work is "full-time;" work available throughout the year is not "seasonal"). At least, it must be so viewed unless rebutted by the Department. *Hopkins*. Here, there was no such rebuttal. And there appears to be no principled distinction between Mr. Lomeli's and Ms. Hopkins' work patterns.

One thus is left with the question whether Mr. Abundes' *relation* to his work was essentially intermittent. It was not.

Per the stipulated testimony, claimant was "available to work for each employer for as long as each specific job [was] available, terminating only upon job completion. . . . It has always been [claimant's] intent to secure full[-]time work throughout the year." As noted above, he logged a significant number of hours by stringing together multiple jobs, sometimes working 7 days per week. It does not appear from the record that any of his periods of unemployment were volitional. Rather, it appears that he worked as much as he could, and apparently would have accepted long-term employment *a la* Mr. Lomeli, if he had been able to obtain it.

Given the Board precedents, Mr. Abundes' time-loss compensation must be based on pre-injury income calculated under RCW 51.08.178(1).

The Board of Industrial Insurance Appeals denied review, and the Department appealed to the superior court pursuant to RCW 51.52.110. The superior court affirmed the Board's decision and ordered the Department to pay Mr. Abundes' reasonable attorney fees. The Department now appeals that order.

■ On review of a summary judgment order, our inquiry is the same as the superior court's. *Romo v. Department of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998). Although judicial appeal of a decision of the

Board of Industrial Insurance Appeals is de novo, it must be based solely on the evidence presented to the Board. RCW 51.52.115; *Romo*, 92 Wn. App. at 353. Here, the evidentiary facts are undisputed, and the sole question involves interpretation of RCW 51.08.178(2), which is a question of law subject to de novo review. However, when an administrative agency is charged with application of an ambiguous statute, the agency's interpretation is accorded great weight. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507-08, 833 P.2d 381 (1992).

RCW 51.08.178 provides in pertinent part:

(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:

(a) By five, if the worker was normally employed one day a week;

(b) By nine, if the worker was normally employed two days a week;

(c) By thirteen, if the worker was normally employed three days a week;

(d) By eighteen, if the worker was normally employed four days a week;

(e) By twenty-two, if the worker was normally employed five days a week;

(f) By twenty-six, if the worker was normally employed six days a week;

(g) By thirty, if the worker was normally employed seven days a week.

The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsec-

tion (2) of this section. However, tips shall also be considered wages only to the extent such tips are reported to the employer for federal income tax purposes. The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.

(2) In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

. . . .

(4) In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed.

■■ This statute should be construed liberally in a way that is most likely to reflect a worker's lost earning capacity, with doubts resolved in favor of the worker. *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997). The precise issue here is whether Mr. Abundes' "current employment or his . . . relation to his . . . employment is essentially part-time or intermittent." RCW 51.08.178(2)(b).[4]

The statutory language of RCW 51.08.178(2)(b) is hardly a model of clarity. Although the parties' argument focuses primarily on the meaning of the word "intermittent," the

---

[4]The Department does not contend Mr. Abundes' employment was "exclusively seasonal in nature" under subsection (2)(a). *See Double D Hop Ranch*, 133 Wn.2d at 798-99.

term is rendered even more ambiguous by the curious phrase "relation to his . . . employment."[5]

The parties have cited (and we have found) only one judicial decision addressing the ambiguous language of RCW 51.08.178(2)(b). It is *School District No. 401 v. Minturn*, 83 Wn. App. 1, 920 P.2d 601 (1996), a Division Two case that unfortunately sheds little light on the problem in this context. In *Minturn*, the claimant was a school bus driver who worked only during the school year but received one-twelfth of her annual pay each month, even during the months when she was not working. *Id.* at 2. The court wrote:

> Because the decision whether to apply [RCW 51.08.178] subsection (1) or subsection (2) turns on the distinction between non-intermittent and intermittent employment, it becomes important to define intermittent employment. The Department defines it as follows: "Intermittent employment is not regular or continuous in the future. It may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps." We accept this definition for purposes of this case.
>
> This definition is not difficult to apply to the usual intermittent worker. For example, a seasonal farm worker often will have duties only during certain months. Correlatively, however, he or she will also receive pay only during those same months. Thus, job duties and job pay coincide, and the employment is clearly intermittent, assuming no off-season job.

*Id.* at 6 (footnote omitted). The court declined to decide whether the bus driver's employment was intermittent or nonintermittent, holding only that the Department's decision must be consistent with the method it chose to determine her monthly wage. *Id.* at 7-8.

*Minturn* did not address the question the Department

---

[5]Further complicating it all is the statute's reference to "part-time" employment. Subsections (1)(a)-(d) also refer to employees who work one, two, three, or four days per week, who presumably also are "part-time" workers. Whether a claimant who worked one, two, three, or four days a week would fall under subsections (1) or (2) is an issue for another day.

raises in this case, which is whether a claimant's employment *history* is relevant to its determination whether his "current employment or his . . . relation to his . . . employment is essentially part-time or intermittent." Even though he was working full-time at the time of his injury, the Department contends, his employment *history* demonstrates an intermittent work record. It apparently contends the phrase "relation to his . . . employment" must refer to the employee's work history.

The Board of Industrial Insurance Appeals has developed a two-step analysis of the phrase:

> [P]art-time or intermittent is determined by looking at the nature of the work actually performed at the time of the injury or is determined by the worker's participation in or relationship to the employment. If either the worker's current employment or the worker's relationship to employment is essentially part-time or intermittent, then the 12 month averaging method as set forth in RCW 51.08.178(2) is used to determine the monthly wage. . . .
>
> . . . We believe that the proper analysis to be used in determining whether [the claimant] was essentially part-time or intermittent requires that we look first to the type of work being performed, and secondly, the relationship of the worker to the employment.

*In re Pino*, Bd. of Indus. Ins. Appeals (BIIA) Nos. 91 5072 & 92 5878, 1994 WL 144956 at *4-*5 (Feb. 2, 1994). In *Pino*, the claimant was a union pipefitter who had been working ten hours a day, six days a week, for twenty days before his injury. *Id.* at *2. Before taking that job he had been unemployed for more than two years. *Id.* The board held the type of work (pipefitting) was not essentially a part-time or intermittent job. *Id.* at *5. In considering the claimant's "relationship to his employment," the board held:

> While the relationship with the current employer may be relevant to resolving the worker's relationship to employment, other factors, including the worker's intent as well as the nature of the current employment (e.g., whether the employment is typically a full-time employment), also bear on the determination.

The subjective element of the analysis involving an inquiry into the worker's intent seems mandated by the language of the statute which refers to the worker's "relationship" to employment. A worker's "relationship" to employment is not a purely historical question, i.e., what has gone on in the past? Most workers who engage in employment intend to remain employed, especially where the employment is by its nature full-time employment. We hasten to add that intent is but one factor we will consider in our analysis. In some cases a worker's stated intent may be completely undercut by a historical pattern or other actions that discredit the stated intent. Clearly, however, the relationship of a worker to an employment must involve at least an inquiry into the expectations of the worker, and perhaps of the employer, which expectations involve the question of intent as to future employment.

General laboring work in the capacity of a pipefitter on a construction project usually requires that the worker seek a new relationship with an employer once each project is completed. In doing so, the worker may have periods of unemployment. We do not believe that working from job to job in construction type work should be considered part-time or intermittent work merely because there may be periods of non-work in between job assignments. Construction work, or any other work, that may require the worker to establish an employment relationship with several different employers, back-to-back or in succession, should be viewed as full-time work. We do not believe the Department may speculate that a worker will not have work available continuously in the future and, based on such speculation, classify the worker as part-time or intermittent. We do not believe that the statute intended this result.

*Id.* The board has reached similar conclusions in several other cases. *See In re Richardson,* BIIA No. 97 2389, 1998 WL 718229 (Aug. 28, 1998) (roofer had weather-related gaps in employment history); *In re Hall,* BIIA No. 96 2562, 1997 WL 754784 (Oct. 1, 1997) (subsection (2) does not apply when employment at time of injury is "reasonably continuous"); *In re Hyde,* BIIA Nos. 94 4079 & 94 4080, 1996 WL 473484 (May 16, 1996) (truck driver had been

laid off and had received unemployment benefits in past, but was working overtime at the time of injury); *In re Parker*, BIIA Nos. 94 2825 & 94 2826, 1995 WL 758590 (Oct. 25, 1995) (union construction laborer had two-year period of unemployment before current job, which he intended to keep as long as employer would allow); *In re Saltz*, BIIA Nos. 92 4309 & 92 4310, 1993 WL 642795 (Dec. 15, 1993) (temporary employment not necessarily intermittent); *In re Hopkins*, BIIA No. 90 5569[6] (Mar. 13, 1992); *In re Guaragna (Williams)*, BIIA No. 90 4246, 1992 WL 117946 (Mar. 11, 1992) (nothing essentially "part-time" or "intermittent" about general laboring work, even if temporary); *see also In re Harrigan*, BIIA No. 94 0369, 1995 WL 399052 (May 30, 1995) (bakery worker with irregular but increasing hours not intermittent employee); *In re Brown*, BIIA No. 93 5534, 1995 WL 92160 (Jan. 12, 1995) (intermittent means more than variable hours from one week to next).

Three recent board decisions conflict dramatically with this approach. *See In re Fitzgerald*, BIIA No. 97 1982, 1998 WL 835140 (Sept. 8, 1998); *In re Reyes*, BIIA Nos. 96 6883 & 96 7793, 1998 WL 718050 (July 27, 1998); *In re Gable*, BIIA No. 95 4228, 1997 WL 314955 (Apr. 1, 1997).

*Reyes* involved facts almost identical to those here. The claimant was a farm laborer who had worked for various employers for no longer than four months. *Reyes*, at *2. He performed general farm labor for three to five employers each year. *Id.* He was able to obtain work during all four seasons, but there were gaps of several months during which he was available but unable to find work. *Id.* The board held the claimant's "employment pattern" clearly fit the Department's definition of intermittent work, which the Division Two panel vaguely accepted for purposes of its decision in *Minturn. Reyes*, at *3. The board also was persuaded by the Department's argument (also presented

---

[6]The decision is not available on Westlaw but is appended to the Brief of Respondent.

in this case) that focusing on his current employment would "grossly" overstate the claimant's actual income. *Id.*

However, even the Department's definition of intermittent work refers to "the future," not to the claimant's prior employment relationships. *See Minturn,* 83 Wn. App. at 6 ("Intermittent employment is not regular or continuous in the future. It may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps."). The board's decision in *Reyes* assumes that, because a farm worker's prior employment was not regular or continuous, his current employment also would have been irregular or uncontinuous and thus intermittent. In the absence of evidence, the assumption is entirely speculative and unjustified.

The board's approach also ignores the Supreme Court's admonition that the statute should be interpreted in a way that reflects the claimant's "lost earning *capacity.*" *Double D Hop Ranch,* 133 Wn.2d at 798 (emphasis added). The focus should be on a claimant's relationship to his employment at the time of his injury. Although the claimant's work history may be relevant to this analysis, it cannot be determinative. Other factors may include the nature of the work, the worker's intent, and the employer's expectations. *Pino,* at *5.

Here, the nature of Mr. Abundes' work—general farm labor—is not essentially part-time or intermittent. *See In re Lomeli,* BIIA No. 90 4156, 1992 WL 56581, at *3 (Jan. 13, 1992). The parties stipulated that Mr. Abundes always intended to work full-time throughout the year, and he had worked at Yorgesen Farms for 50 days. The record contains no evidence of the employer's expectations. There thus is no evidence, other than the Department's speculative reference to his past employment, supporting the conclusion Mr. Abundes' employment at the time of his injury was intermittent.

Focusing on the claimant's *current* employment relationship places the Department's policy concerns in the proper light. There is no logical reason why a claimant should be

penalized solely because his *prior* employment was irregular or uncontinuous. Such a rule would be unfair to an employee who had worked a series of jobs before being injured, and it would shift the analysis away from the proper focus on the injured worker's lost earning *capacity*. Nor does the conclusion negate RCW 51.08.178(2)(a), which properly should apply to a claimant whose *current* employment relationship is intermittent. Finally, the focus on the *current* employment is not unfair to claimants whose monthly wage cannot be determined for whatever reason; for those claimants, RCW 51.08.178(4) permits reference to the "usual wage paid other employees engaged in like or similar occupations." *See In re Galicia*, BIIA No. 96 2347, 1997 WL 754598 (Oct. 23, 1997).

The superior court properly affirmed the Board's decision.

Affirmed.

Kurtz, A.C.J., and Sweeney, J., concur.

Review granted at 139 Wn.2d 1001 (1999).