[No. 66994-0-I.   Division One.   November 13, 2012.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*, v. BRIAN I. SHIRLEY, *Respondent*.

872

*Robert M. McKenna, Attorney General,* and *Scott T. Middleton* and *Steve R. Vinyard, Assistants,* for appellant.

*Benjamin R. Sligar* (of *Davies Pearson PC*), for respondent.

¶1 LAU, J. — A surviving spouse of an industrial worker whose death is work related is entitled to compensation under the Industrial Insurance Act, Title 51 RCW. Brian Shirley suffered an industrial injury in 2004. He died accidentally in 2007 after ingesting multiple prescription medications—prescribed to treat pain resulting from the industrial injury—simultaneously with alcohol. The Department of Labor and Industries (Department) appeals a superior court order denying its motion for summary judgment and affirming an award of survivor benefits to Mr. Shirley's widow. The Department argues that Mr. Shirley's simultaneous ingestion of alcohol and prescription medications constituted an intervening activity that broke the chain of causation between his industrial injury and his death, thereby precluding the payment of survivor benefits. Because the medications were prescribed to treat the last-

ing effects of Mr. Shirley's industrial injury and thus were *a* proximate cause of death under Washington's multiple proximate cause analysis, we affirm the superior court's order affirming the award of survivor benefits to Ms. Shirley.

## FACTS

¶2 In June 2004, Brian Shirley sustained an industrial injury to his low back. He filed an application for industrial insurance benefits with the Department. The Department allowed his claim and paid benefits.

¶3 The Department closed Mr. Shirley's claim in March 2005 with no award for permanent partial disability. Mr. Shirley filed a protest and request for reconsideration, but the Department affirmed its closing order in May 2005. At the time his claim closed, Mr. Shirley was taking only ibuprofen and no physician was prescribing him opioid medications. Mr. Shirley never filed an application to re-open his claim.

¶4 On the morning of May 3, 2007, Mr. Shirley's wife, Desiree Shirley, found him dead. According to Ms. Shirley, Mr. Shirley was employed at the time he died. The day before he died, Mr. Shirley went to work as usual. That evening, he helped his neighbor chop wood and then returned home and went to bed. He did not wake up the next morning.

¶5 The King County medical examiner performed an autopsy and listed the cause of death as "[a]cute combined ethanol [alcohol], oxycodone, citalopram, alprazolam, amitriptyline, carbamazepine, and acetaminophen intoxication. Hypertensive and atherosclerotic cardiovascular disease contributed to death. The manner of death is classified as ACCIDENT." Ex. 4, at 1. Mr. Shirley had a history of high blood pressure, high cholesterol, pancreatitis, smoking, and alcoholism. The autopsy report also indicated an enlarged heart.

¶6 The toxicology report indicated that Mr. Shirley's blood alcohol content was 0.07 grams per 100 mL, slightly lower than the state-presumed intoxication level of 0.08 grams per 100 mL. The report also indicated that the following additional substances were present in Mr. Shirley's blood at the time he died:

| | |
|---|---|
| oxycodone | 0.13 mg/L |
| citalopram | 0.43 mg/L |
| desmethylcitalopram | pos[1] mg/L |
| Alprazolam | 0.02 mg/L |
| amitriptyline | 0.10 mg/L |
| Nortriptyline | 0.11 mg/L |
| Carbamazepine | 1.2 mg/L |
| acetaminophen | 11.0 mg/L |
| Promethazine | pos mg/L |
| caffeine | pos |
| nicotine/cotinine | pos |

Ex. 4, at 7. When his claim closed in 2005, Mr. Shirley was not being prescribed any of the medications found in the 2007 toxicology report.

¶7 The medical experts agreed the immediate cause of death was the combination of ethanol (alcohol), oxycodone, citalopram, alprazolam, amitriptyline, carbamazepine, and acetaminophen. The experts agreed that the levels of oxycodone and citalopram found in Mr. Shirley's blood during the autopsy were inconsistent with normal dosing. Dr. Jaymie Mai testified that the oxycodone level, while higher than normal dosage, was closer to a "therapeutic" level than a "toxic" level. Dr. Donald Reay testified the oxycodone was on the low end of the toxic range. The experts agreed that none of the drug levels in Mr. Shirley's blood were highly elevated. They also agreed that the combination of drugs and alcohol suppressed Mr. Shirley's respiration and gag reflex, causing him to suffocate. Nei-

---

[1] "Pos" indicates "positive." Ex. 4.

ther the drugs alone nor the alcohol alone would have killed Mr. Shirley.

¶8 From the time Mr. Shirley was injured until he died—including the period between the 2005 claim closure and his 2007 death—Dr. Chester Jangala treated him for the effects of the industrial injury. Dr. Jangala testified in his deposition that Mr. Shirley experienced low back pain and depression that were causally related to the industrial injury. Of the substances found in Mr. Shirley's blood at the time of death, Dr. Jangala had prescribed oxycodone, citalopram, alprazolam, and amitriptyline. Dr. Jangala had prescribed the alprazolam and amitriptyline "in the distant past." Jangala Dep. (Oct. 26, 2009) at 12-13.[2] He testified that the prescriptions were related to the effects of Mr. Shirley's industrial injury.[3] Dr. Jangala testified that he was "usually fairly cautious" about warning patients not to mix medications or consume alcohol while taking certain medications, and it was "likely" that he counseled Mr. Shirley not to mix alcohol and medications.[4] Jangala Dep. at 26.

¶9 No evidence indicated that Mr. Shirley committed suicide. Dr. Jangala testified he was "puzzled why [Mr. Shirley] took so many different things at once. I mean none of them were in particular high dose. I think he took a little bit of everything that he had in the house." Jangala Dep. at 15. Dr. Jangala suspected that Mr. Shirley "was in a lot of pain and maybe tried one of something and it didn't help

---

[2] We refer to the witnesses' deposition and hearing testimony by last name and page number.

[3] Dr. Mai reviewed Dr. Jangala's records and testified that Dr. Jangala prescribed the oxycodone for Mr. Shirley's chronic low back pain stemming from the industrial accident. Dr. Jangala testified that he prescribed oxycodone to relieve acute pain and amitriptyline and citalopram to relieve Mr. Shirley's chronic pain related to the industrial injury.

[4] Dr. Mai testified that Dr. Jangala documented the advice and warning he gave Mr. Shirley against ingesting alcohol with the prescribed drugs. Dr. Mai also testified that dispensing pharmacies include a warning not to use alcohol with such medications. Dr. Reay similarly testified that medication bottles include a warning not to take the medication with alcohol.

the pain, and he took a couple of something else and it still didn't help the pain and decided to take a couple more of something else and still didn't help the pain." Jangala Dep. at 18. Dr. Reay reviewed the autopsy and toxicological findings and testified that "this would be a death that's attributed to multiple medications and probably taken in a therapeutic setting which caused death." Reay Dep. at 29.

¶10 Ms. Shirley filed an application for survivor benefits under the Industrial Insurance Act, RCW 51.32.050(2)(a), which the Department denied. Ms. Shirley protested, and the Department affirmed its order of denial. Ms. Shirley then appealed to the Board of Industrial Insurance Appeals (Board). The industrial appeals judge found that Mr. Shirley's ingestion of alcohol simultaneously with multiple medications constituted an "independent, supervening cause which broke the causal connection between Mr. Shirley's industrial injury and his death." Certified Appeal Board Record (CABR) at 45. Ms. Shirley appealed to the full Board, which reversed the industrial appeals judge and allowed the claim. CABR at 2-10, 28-31. The Board reasoned that

> [t]he clear preponderance of the evidence . . . is that Dr. Jangala prescribed opioids for Mr. Shirley's low back condition, which was caused by the industrial injury in 2004. But for Mr. Shirley's use of opioids, to address his industrially related back pain, Mr. Shirley's use of alcohol would not have caused his death.

CABR at 8. It concluded that Mr. Shirley's use of alcohol while taking prescription medications was against medical advice but did not rise to the level of a supervening cause that would break the chain of causation and preclude benefits. CABR at 8-9.

¶11 The Department appealed to King County Superior Court and moved for summary judgment and denial of survivor benefits to Ms. Shirley. The court denied the Department's motion and affirmed the award of survivor benefits to Ms. Shirley, finding that the 2004 industrial injury proximately caused Mr. Shirley's death. The Depart-

ment now appeals, arguing that Mr. Shirley's simultaneous ingestion of alcohol and multiple prescription medications was an intervening activity that broke the chain of causation between his industrial injury and his death, thereby precluding survivor benefits.

## STANDARD OF REVIEW

¶12 On review to the superior court, the Board's decision is prima facie correct and the burden of proof is on the party challenging the decision. RCW 51.52.115; *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). The superior court reviews the Board's decision de novo and may substitute its own findings and decision for the Board's if it finds from a " 'fair preponderance of credible evidence' " that the Board's findings and decision were incorrect. *Ruse*, 138 Wn.2d at 5-6 (internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)). Our review is governed by RCW 51.52.140, which provides that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." Because we do not sit in the same position as the superior court, we review only " 'whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.' " *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (quoting *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006)); *Ruse*, 138 Wn.2d at 5. "[O]n appeal of a summary judgment order where no facts are in dispute and the only issue is a question of law, the standard of review is de novo." *Dep't of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993). Our review is the same as the superior court's and is based solely on the evidence presented to the Board. *Dep't of Labor & Indus. v. Avundes*, 95 Wn. App. 265, 269-70, 976 P.2d 637 (1999).

## ANALYSIS

■ ¶13 The Board's findings of fact were unchallenged in the superior court and neither party assigns error to those findings on appeal. Accordingly, the unchallenged findings of fact are verities on appeal. *Fuller v. Emp't Sec. Dep't*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988); *Bergsma v. Dep't of Labor & Indus.*, 33 Wn. App. 609, 613, 656 P.2d 1109 (1983) ("Unchallenged findings of fact become the established facts of the case on review . . . ."). Our review is limited to a determination of whether the conclusions of law are supported by the findings. *Fuller*, 52 Wn. App. at 606; *Bergsma*, 33 Wn. App. at 613; *see also Jamison v. Dep't of Labor & Indus.*, 65 Wn. App. 125, 127 n.1, 827 P.2d 1085 (1992). The sole legal question for our consideration is whether Mr. Shirley's ingestion of a legal amount of alcohol simultaneously with multiple prescription medications constituted an intervening act that broke the causal chain between his original industrial injury and his death.

### *The Industrial Insurance Act and Survivor Benefits*

■ ¶14 The Industrial Insurance Act (Act), Title 51 RCW, is a time-loss compensation scheme for workers who suffer industrial (work-related) injuries. The Act is a compromise between employers and their workers. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 469, 745 P.2d 1295 (1987). In exchange for limited liability, the employer pays on some claims that have no common law liability. *Dennis*, 109 Wn.2d at 469. And in exchange for a lower rate of recovery than he or she could have received in a civil action, the worker is assured of a remedy without having to fight for it. *Dennis*, 109 Wn.2d at 469. Workers and their dependents are guaranteed "sure and certain relief" regardless of questions of fault. RCW 51.04.010; *Dennis*, 109 Wn.2d at 470; *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 634, 519 P.2d 22 (1974) ("The [Act] is intended to grant the employee a sure and certain relief . . . regardless of the fault

or due care of either the employer or the employee."). "To this end, the guiding principle in construing provisions of the . . . Act is that [it] is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis*, 109 Wn.2d at 470; RCW 51.12.010. Appellate review of claims filed under the Act is fairly limited. *Du Pont v. Dep't of Labor & Indus.*, 46 Wn. App. 471, 475, 730 P.2d 1345 (1986). However, the person claiming benefits must still prove by competent evidence the right to receive such compensation. *See Jenkins v. Dep't of Labor & Indus.*, 85 Wn. App. 7, 12-15, 931 P.2d 907 (1996); *Powell v. Dep't of Labor & Indus.*, 79 Wn.2d 378, 385-86, 485 P.2d 990 (1971).

■ ¶15 Under the Act's survivor benefits provision, RCW 51.32.050(2)(a), a surviving spouse of a deceased worker eligible for benefits under the Act is entitled to receive monthly benefits for life or until remarriage per a fixed schedule. Benefits are payable only if the deceased spouse's death "results from the [industrial] injury." RCW 51.32.050(2)(a). Thus, the industrial injury must proximately cause the worker's death. *See* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.06, at 124 (5th ed. 2005) (WPI). "Proximate cause" is defined in WPI 155.06:

> The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the death complained of and without which such death would not have happened.
>
> There may be one or more proximate causes of a death. For a worker to recover benefits under the Industrial Insurance Act, the industrial injury must be a proximate cause of the alleged death for which benefits are sought. The law does not require that the industrial injury be the sole proximate cause of such death.

*See also City of Bremerton v. Shreeve*, 55 Wn. App. 334, 339-40, 777 P.2d 568 (1989) (trial court did not err in giving

an instruction adapted from WPI 155.06 that set forth a "multiple proximate cause theory" in an occupational disease case; the law does not require that the industrial injury be the sole proximate cause of the alleged condition or disability for which benefits are sought).

*McDougle's Applicability in the Context of Death Claims*

¶16 Citing *McDougle v. Department of Labor & Industries*, 64 Wn.2d 640, 393 P.2d 631 (1964) and *Scott Paper Co. v. Department of Labor & Industries*, 73 Wn.2d 840, 440 P.2d 818 (1968), the Department argues that Washington courts "have developed a test to determine when an intervening act breaks the causal chain between the injury and the claimed condition in the context of aggravation applications" and claims we should "apply this analogous test to the context of death claims."[5] Appellant's Br. at 19, 21. Ms. Shirley counters that we should decline to extend *McDougle* beyond the limited context of aggravation claims.

¶17 In *McDougle*, the claimant suffered a work-related back strain in 1955. *McDougle*, 64 Wn.2d at 641. His claim was allowed and closed two years later with an award of 30

---

[5] The Department made this argument for the first time on appeal to the superior court. The Board thus had no opportunity to rule on whether the *McDougle* test for aggravation cases should be extended to cases like Mr. Shirley's. The superior court ruled on this issue and determined that *McDougle* was limited to aggravation claims and thus inapplicable to Mr. Shirley's case. Generally, "[u]pon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board." RCW 51.52.115; *Hanquet v. Dep't of Labor & Indus.*, 75 Wn. App. 657, 663, 879 P.2d 326 (1994). We may decline to review on appeal an issue not raised before the Board. *Kustura v. Dep't of Labor & Indus.*, 142 Wn. App. 655, 673-74, 175 P.3d 1117 (2008) ("Because the workers did not raise either argument in their appeals to the Board, we do not consider them."). But here, Ms. Shirley did not object when the Department raised the issue in superior court and both parties fully briefed the issue in superior court and on appeal. We review the issue because we determine it is necessary to decide the case. *Shafer v. Dep't of Labor & Indus.*, 140 Wn. App. 1, 6, 159 P.3d 473 (2007) (claimant failed to raise an issue in her petition to the Board, but because the Department did not object when claimant raised it before the superior court and the issue was fully briefed by both parties both in the superior court and on appeal, we "elect[ed]" to resolve it pursuant to our inherent power to address issues necessary to a proper decision"), *aff'd*, 166 Wn.2d 710, 213 P.3d 591 (2009).

percent permanent partial disability for an unspecified disability. *McDougle*, 64 Wn.2d at 641. In 1958, the claimant suffered back soreness after helping his brother-in-law load sacks of feed. *McDougle*, 64 Wn.2d at 641. He received treatment from a doctor and filed an application with the Department to reopen his claim for further treatment. *McDougle*, 64 Wn.2d at 642. The Department rejected the claim, concluding that "the claimant's 'present low back condition is attributable to a new injury occurring on November 12, 1958.' " *McDougle*, 64 Wn.2d at 642 (quoting Clerk's Papers). The Board affirmed, finding that although the 1958 incident aggravated the claimant's back condition, " 'such aggravation was due to a new intervening independent cause, namely, lifting a sack or sacks of grain on that date.' " *McDougle*, 64 Wn.2d at 643 (quoting Clerk's Papers). The superior court affirmed the Board. *McDougle*, 64 Wn.2d at 643.

¶18 *McDougle* explained that "[a]ggravation of the claimant's condition caused by the ordinary incidents of living—by work which he could be expected to do; by sports or activities in which he could be expected to participate—is compensable because it is attributable to the condition caused by the original injury." *McDougle*, 64 Wn.2d at 644. Accordingly, a claimant's aggravated condition is compensable where the claimant's behavior "was neither improper nor unreasonable; neither temerarious nor rash." *McDougle*, 64 Wn.2d at 644. On the other hand, "aggravation caused by activities in which the claimant could not, because of his existing disability, reasonably expect to engage without injury, would not be compensable." *McDougle*, 64 Wn.2d at 644. *McDougle* adopted the following test in determining whether the industrial injury caused the aggravation:

> The test to be applied, in cases such as the present, is whether the activity which caused the aggravation is something that the claimant might reasonably be expected to be doing, or whether it is something that one with his disability would not reasonably be expected to be doing. See 1 [Arthur] Larson, Workmen's Compensation Law § 13.11, p. 183.

*McDougle*, 64 Wn.2d at 645. The court reversed, with instructions to further consider the claimant's application in light of this test. *McDougle*, 64 Wn.2d at 646.

¶19 *McDougle* returned to the Supreme Court as *Scott Paper*. The court confirmed the "reasonably expected conduct" test set forth in *McDougle*. *Scott Paper*, 73 Wn.2d at 841. The court clarified *McDougle*, explaining that whether a claimant's conduct is reasonably expected is determined by whether the claimant's conduct is "such as could reasonably be expected *of a man with his [department-established]* disability," not the claimant's "subjective personally known condition as of the date of the aggravation . . . ." *Scott Paper*, 73 Wn.2d at 848 (emphasis added).

¶20 The Department acknowledges that *McDougle* has never been cited outside the context of aggravation claims but argues that the *McDougle* test "should be applied to cases where it is asserted that an injury or death following an original compensable industrial injury is compensable as a residual of the original injury." Appellant's Reply Br. at 14. On summary judgment, the superior court declined to do so, ruling that *McDougle* should be limited to aggravation claims. We agree. *McDougle* addressed a claimant's attempt to reopen a closed claim for aggravation of the covered injury after a prior permanent partial disability award had been made. The court's carefully worded test asked whether the activity that caused the claimant's aggravation was something that "one *with his disability* would not reasonably be expected to be doing." *McDougle*, 64 Wn.2d at 645 (emphasis added). *Scott Paper* clarified that the *McDougle* rule is applied only as it relates to reasonableness in light of a *previously established disability*. *Scott Paper*, 73 Wn.2d at 848.

¶21 Here, Mr. Shirley had no department-established disability when his claim closed. Ms. Shirley is not seeking to reopen the claim and is not asserting an aggravation of the original injury. She is claiming survivor benefits as the surviving spouse. Had the legislature intended to preclude

benefits in circumstances like these, it could have done so—as it has in other circumstances. *See, e.g.*, RCW 51.32-.020 (precluding benefits to a worker or his beneficiaries "[i]f injury or death results to a worker from the deliberate intention of the worker himself or herself to produce such injury or death"); *see also Harris v. Dep't of Labor & Indus.*, 120 Wn.2d 461, 472-73, 843 P.2d 1056 (1993) (declining to read into the Act that which is absent). In light of Washington's strong no-fault policy regarding workers' compensation claims as discussed above, we decline to extend *McDougle* and *Scott Paper*—which addressed a limited set of facts and have not been applied outside of the aggravation context—to death claims.[6]

### Proximate Cause Analysis

¶22 We turn next to proximate cause and consider whether Mr. Shirley's ingestion of alcohol simultaneously with prescription medications broke the chain of proximate causation between his industrial injury and his death. The Board concluded that the June 2004 industrial injury proximately caused Mr. Shirley's death within the meaning of RCW 51.32.050. The Board determined that the alcohol was not a supervening cause: "In order to determine that the alcohol was a supervening cause, we would have to be

---

[6] The Department also argues that it could not have reasonably foreseen Mr. Shirley's death when (1) he was not being prescribed opioids at the time of claim closure and (2) the claim was never reopened. This is not dispositive of the issue. In *In re Thomas*, Nos. 0417345 & 0417346, 2006 WL 2989442, 2006 WA Wrk. Comp. LEXIS 86 (Wash. Bd. of Indus. Ins. Appeals May 17, 2006), the Board discussed *In re Labella*, No. 89 3586 (Wash. Bd. of Indus. Ins. Appeals Aug 20, 1991), and noted that in *Labella*, a claimant's pursuit of treatment that the Department had told her was unauthorized broke the chain of causation between the claimant's injury and a subsequent aggravation. *Thomas*, 2006 WL 2989442, at *5-6, 2006 WA Wrk. Comp. LEXIS 86, at *13-16. But the *Thomas* Board noted that the general rule (absent a claimant who seeks treatment knowing the Department has deemed it unauthorized) is that consequences of treatment prescribed by the attending physician are covered even if the treatment itself is not proper and necessary. *Thomas*, 2006 WL 2989442, at *6, 2006 WA Wrk. Comp. LEXIS 86, at *14. Here, the Board's unchallenged finding was that the prescriptions implicated in Mr. Shirley's death "constituted necessary treatment for his industrial injury." CABR at 9. No evidence indicates the Department ever told Mr. Shirley such treatment was unauthorized.

able to find that the alcohol *alone* would have caused Mr. Shirley to die; however, this determination is not supported by the evidence in this matter." CABR at 8 (emphasis added). The Department disputes this conclusion and argues that even under multiple proximate cause analysis, Mr. Shirley's act broke the causal chain. Ms. Shirley counters that neither the alcohol nor the drugs alone would have killed Mr. Shirley and the drugs were a proximate cause of his death.

¶23 As discussed above, the Act permits multiple proximate causes:

> The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the death complained of and without which such death would not have happened.

> There may be one or more proximate causes of a death. For a worker to recover benefits under the Industrial Insurance Act, the industrial injury must be a proximate cause of the alleged death for which benefits are sought. The law does not require that the industrial injury be the sole proximate cause of such death.

WPI 155.06. If this case had proceeded to jury trial, the court would have instructed the jury consistent with WPI 155.06's (or its alternative, WPI 155.06.02's) "proximate cause" definition. To find the industrial injury proximately caused the worker's death, that instruction requires the jury to find the industrial injury was "*a*," not *the*, proximate cause of the worker's death. WPI 155.06. In *Wendt v. Department of Labor & Industries*, 18 Wn. App. 674, 676-77, 571 P.2d 229 (1977), the court held that it is error not to give an instruction on multiple proximate causes where evidence exists to support a theory that the disability (death here) resulted from the combined effects of the industrial injury and other unrelated conditions. The Department's contentions ignore entirely the Act's multiple cause directive. And as the WPI committee comments indicate, "it is advisable to give the second paragraph of WPI 155.06 if the

evidence presents an issue of multiple causes." WPI 155.06 cmt. at 125.

¶24 A fundamental principle of workers' compensation is that if the accident or injury is a proximate cause of the disability or death for which compensation is sought, the previous physical condition of the worker is immaterial. *Dennis*, 109 Wn.2d at 471; *Shreeve*, 55 Wn. App. at 340. Fault is irrelevant, and work relatedness is the only issue. *Shreeve*, 55 Wn. App. at 340 n.5; *see also Montoya*, 10 Wn. App. at 634 ("The [Act] is intended to grant the employee a sure and certain relief . . . regardless of the fault or due care of either the employer or the employee."). The worker—or the worker's family in the case of the worker's death—is entitled to compensation for injuries suffered in the course of employment. RCW 51.32.010. Here, the Board's unchallenged findings establish that (1) Mr. Shirley injured his back in the course of his employment with Wells Trucking and Leasing Inc., (2) this industrial injury proximately caused chronic low back pain, and (3) the prescriptions implicated in Mr. Shirley's death constituted necessary treatment for his injury.

¶25 Whether an injured worker's fault breaks the causal chain is not a factor under the Act, with two exceptions: circumstances in which a worker deliberately injures or kills himself or herself[7] and in the limited context of aggravation claims as discussed above. The Department repeatedly casts Mr. Shirley's behavior as "intentional or reckless." Appellant's Br. at 12, 17; Appellant's Reply Br. at 2-3, 11-12, 17. It argues that "[c]ourts in other jurisdictions have found that intentional or reckless acts by the worker have constituted intervening acts that break the chain of

---

[7] RCW 51.32.020 precludes benefits to a worker or his beneficiaries "[i]f injury or death results to a worker from the deliberate intention of the worker himself or herself to produce such injury or death . . . ." This provision acts as "a statutory bar between cause and proximate result." *Dep't of Labor & Indus. v. Baker*, 57 Wn. App. 57, 62, 786 P.2d 821 (1990).

causation between the original injury and a subsequent accident." Appellant's Br. at 13-14. But neither the Board nor the superior court found that Mr. Shirley acted intentionally or recklessly.[8] Further, the record does not support the Department's contention that Mr. Shirley acted intentionally or recklessly to cause his own death. Dr. Jangala testified that none of the medications in Mr. Shirley's blood were in a particularly high dose and he did not think Mr. Shirley's death was intentional. He stated that Mr. Shirley was likely "in a lot of pain" and attempted to relieve the pain by taking multiple medications. Jangala Dep. at 18. Most of the Department's cited cases pertain to aggravation rather than death claims and involve claimants who suffered subsequent injuries due to their own intentional conduct and, thus, were not reasonably attributable to a proximate cause set in motion by the original work-related injury.[9] The Department's only cited death case, *In re Death of Sade*, 649 P.2d 538, 540-41 (Okla. 1982), involved a claimant who intentionally disregarded medical instructions and took all of his pain pills at once. The Department cites to no Washington authority for its argument other than *McDougle* and *Scott Paper*. As discussed above, those cases are inapplicable here.

¶26 Board decisions addressing fact patterns similar to Mr. Shirley's have applied multiple proximate cause analysis to find coverage. The Board publishes its "significant decisions" and makes them available to the public. RCW 51.52.160. "These decisions are nonbinding, but persuasive

---

[8] The Board noted that Mr. Shirley's use of alcohol while taking prescription medications "was not a wise decision." CABR at 8. The Board found that "Mr. Shirley did not intend to kill himself, but his decision to take an excessive amount of oxycodone with multiple other medications and, particularly, alcohol, was against medical advice." CABR at 9. The superior court "agree[d] with the Department that Mr. Shirley was negligent by ingesting alcohol while combining numerous medications that were not meant to be taken simultaneously" but concluded that such negligence was not an intervening cause in Mr. Shirley's case.

[9] *See McDonough v. Sears, Roebuck & Co.*, 127 N.J.L. 158, 21 A.2d 314 (1941); *Sullivan v. B&A Constr., Inc.*, 307 N.Y. 161, 120 N.E.2d 694 (1954); *Allen v. Indus. Comm'n*, 124 Ariz. 173, 602 P.2d 841 (1979).

authority for this court." *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005); *see also Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991) ("While the Board's interpretation of the Act is not binding upon this court, it is entitled to great deference.").

¶27 In *In re Killian*, Dkt. No. 06 17478, 2007 WL 4986270, 2007 WA Wrk. Comp. LEXIS 196 (Wash. Bd. of Indus. Ins. Appeals Nov. 20, 2007), the Board applied multiple proximate cause analysis to find coverage in a case with similar facts. In *Killian*, the claimant suffered an industrial injury in 1991. *Killian*, 2007 WL 4986270, at *4, 2007 WA Wrk. Comp. LEXIS 196, at *10. The Department paid benefits and subsequently closed the claim. *Killian*, 2007 WL 4986270, at *4, 2007 WA Wrk. Comp. LEXIS 196, at *10. The Department reopened the claim in 1993 due to an aggravation, then closed the claim again in 2003. *Killian*, 2007 WL 4986270, at *4, 2007 WA Wrk. Comp. LEXIS 196, at *10-11. The claimant died in 2004 of respiratory depression caused by an accidental mixed drug overdose from a combination of methadone, flexeril, and marijuana, and liver failure resulting from taking methadone over a long period of time. *Killian*, 2007 WL 4986270, at *5, 2007 WA Wrk. Comp. LEXIS 196, at *12-13. The claimant had prescriptions for the methadone and flexeril to alleviate chronic pain resulting from the 1991 industrial injury, and he also used the marijuana to alleviate pain. *Killian*, 2007 WL 4986270, at *3-5, 2007 WA Wrk. Comp. LEXIS 196, at *7-13. The medical examiner found that the combination of the three drugs, along with liver failure, caused the claimant's death, although one or a combination of any two of those things likely would not have killed him. *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *7-8. The dosage levels indicated the claimant did not abuse any of the medications. *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *7.

¶28 The claimant's spouse applied for survivor benefits under RCW 51.32.050(2)(a). *Killian*, 2007 WL 4986270, at

*1, *4, 2007 WA Wrk. Comp. LEXIS 196, at *2, *11-12. The Department denied her claim, concluding the death was unrelated to the industrial injury. *Killian*, 2007 WL 4986270, at *4, 2007 WA Wrk. Comp. LEXIS 196, at *12. The industrial appeals judge ruled that but for the marijuana, the claimant would not have died and that the other medications prescribed for the industrial injury were not *the* proximate cause of his death. *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *19. The spouse appealed to the Board, which reversed and found that prescribed medications were a proximate cause of the claimant's death. *Killian*, 2007 WL 4986270, at *4-5, 2007 WA Wrk. Comp. LEXIS 196, at *9-10. The Board concluded that the industrial appeals judge erred in "looking for a *sole* cause of death, which he determined was due to the addition of marijuana to [the claimant's] other medicines . . . ." *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *8. Instead, the proper question was whether the prescribed drugs were *a* cause of death. *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *6-7.

¶29 The *Killian* decision cites to another multiple proximate causation case—*In re Thomas*, Nos. 0417345 & 0417536, 2006 WL 2989442, 2006 WA Wrk. Comp. LEXIS 86 (Wash. Bd. of Indus. Ins. Appeals May 17, 2006). In *Thomas*, the claimant suffered an industrial injury in 2002 and died in 2003 of an accidental oxycodone overdose. *Thomas*, 2006 WL 2989442, at *1-2, 2006 WA Wrk. Comp. LEXIS 86, at *3. Her benefits claim was still open at the time she died. *Thomas*, 2006 WL 2989442, at *7-8, 2006 WA Wrk. Comp. LEXIS 86, at *17-20. At the time of death, the claimant had prescriptions for percocet and oxycodone to alleviate pain associated with the industrial injury and a preexisting condition. *Thomas*, 2006 WL 2989442, at *2, 2006 WA Wrk. Comp. LEXIS 86, at *5. The industrial appeals judge denied her spouse's application for survivor benefits, concluding in part that the industrial injury did

not proximately cause the claimant's death. *Thomas*, 2006 WL 2989442, at *4, 2006 WA Wrk. Comp. LEXIS 86, at *9-10. The Board reversed, concluding that the claimant took a large dose of oxycodone the day she died and there was a reasonable inference she took it to relieve pain resulting from the industrial injury. *Thomas*, 2006 WL 2989442, at *4, 2006 WA Wrk. Comp. LEXIS 86, at *9-10. Proximate cause existed because "but for the industrial injury, [the claimant] would not have taken the amount of Oxycodone she took on [the day she died]." *Thomas*, 2006 WL 2989442, at *4, 2006 WA Wrk. Comp. LEXIS 86, at *10. Her use of the prescribed opioids did not break the chain of causation between the industrial injury and death. *Thomas*, 2006 WL 2989442, at *7-8, 2006 WA Wrk. Comp. LEXIS 86, at *19-22. Thus, RCW 51.32.050 did not bar survivor benefits. *Thomas*, 2006 WL 2989442, at *7-8, 2006 WA Wrk. Comp. LEXIS 86, at *19-22.

¶30 The Department's attempts to distinguish *Killian* and *Thomas* are unpersuasive. It argues that in *Killian*, the claimant's medications were prescribed and taken at appropriate levels, he used marijuana to relieve pain resulting from the injury, and he was not warned against the risk of combining marijuana with his medications. The Department notes that in contrast, Mr. Shirley's blood contained higher-than-therapeutic levels of two drugs, there was no evidence the alcohol was used to relieve pain, and Mr. Shirley received warnings against mixing the medications with alcohol. The Department claims these factual differences make *Killian* inapplicable here. This argument is unavailing given the Board's statement in *Killian* that "*most importantly*, the other drugs were *a* proximate cause of the death . . . . The record indicates that the medicines used to treat Mr. Killian's chronic back pain were a contributing cause of his death, directly or indirectly . . . ." *Killian*, 2007 WL 4986270, at *3, 2007 WA Wrk. Comp. LEXIS 196, at *8-9 (first emphasis added). Similarly, the record here indicates that the medicines used to treat Mr. Shirley's chronic back pain were a contributing cause of his death.

¶31 Regarding *Thomas*, the Board argues that unlike in Mr. Shirley's case, no evidence indicated the claimant took more than the prescribed dosage of the medication or otherwise abused her medications. In fact, the Board in *Thomas* noted, "None of the expert witnesses seems to know whether [the prescribed amount of medications] could account for the high level of Oxycodone in Ms. Thomas's blood at the time of death" and "there is no direct evidence of what Ms. Thomas actually took in the hours before her death." *Thomas*, 2006 WL 2989442, at *2, 2006 WA Wrk. Comp. LEXIS 86, at *5. The Board emphasized there was no dispute about the cause of death or that it was accidental, despite the fact that the claimant's oxycodone level was extremely high and no one knew whether she took more than the prescribed amount.[10] *Thomas*, 2006 WL 2989442, at *1, 2006 WA Wrk. Comp. LEXIS 86, at *3. Similarly, in Mr. Shirley's case, the parties do not dispute the cause of death or that it was accidental. Despite the multiple drugs in his system, there is no evidence to suggest when and in what amounts he took them and no evidence indicates he intentionally abused the medications.[11]

---

[10] The Department claims that the Board in *Thomas* concluded that the claimant " 'was innocently relying on her treating physician's advice' " and therefore " 'her use of medications did not break the chain of proximate causation between the industrial injury and the benefits sought.' " Appellant's Reply Br. at 7 (quoting *Thomas*, 2006 WL 2989442, at *9, 2006 WA Wrk. Comp. LEXIS 86, at *23). The Department seems to imply that this means the claimant in *Thomas* followed the correct dosage of her prescriptions. This is inaccurate. The Board's above statement in *Thomas* was made in a different context, namely whether the claimant should have known that the Department would refuse to cover the cost of the drugs in light of the fact that the opioid regimen was not proper and necessary treatment. Because the Department gave no such indication, the claimant's decision to rely on her physician's prescriptions and advice did not break the chain of causation. The Board in *Thomas* specifically noted that the experts did not know whether the claimant took more than the prescribed dosages of her medications.

[11] As discussed above, the deposition and hearing testimony and other evidence indicated that (1) Mr. Shirley likely took the drugs in a therapeutic setting to relieve pain associated with the industrial injury, (2) none of the drug levels were highly elevated and the two drugs present in higher-than-normal amounts were closer to the therapeutic than the toxic range, and (3) Mr. Shirley's death was accidental.

¶32 The record here clearly indicates that but for the prescription medications, prescribed specifically and directly for the effects of the industrial injury, Mr. Shirley would not have died. The Board's unchallenged finding indicated that although his decision to mix alcohol and medications was "not a wise decision" and was "against medical advice," Mr. Shirley "did not intend to kill himself." CABR at 8, 9. It is undisputed that neither the drugs nor the alcohol alone would have caused Mr. Shirley's death. Thus, each was *a* proximate cause. Under the reasoning in *Killian* and *Thomas*, Mr. Shirley's decision to simultaneously consume alcohol and his medications did not amount to a supervening cause and, thus, did not break the chain of causation between his industrial injury and his death. In light of the Act's no-fault policy and its mandate that the workers' compensation law be construed in the worker's favor, we affirm the grant of survivor benefits to Ms. Shirley.

## CONCLUSION

¶33 Mr. Shirley's simultaneous ingestion of alcohol and multiple prescription medications did not break the chain of causation between his industrial injury and his death. Because the medications prescribed to treat pain resulting from Mr. Shirley's industrial injury were a proximate cause of his death, we affirm the trial court's order denying the Department's motion for summary judgment and affirming the Board's grant of survivor benefits to Ms. Shirley. We also award RCW 51.52.130 attorney fees and costs conditioned on respondent's compliance with RAP 18.1.

SPEARMAN, A.C.J., concurs.

¶34 GROSSE, J. (dissenting) — Not every act that causes harm results in legal liability.[12] Although an act or omission

---

[12] *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 51, 176 P.3d 497 (2008).

may be a cause in fact of an injury, it nevertheless may not be a legal cause of the injury. Legal causation is as much a part of proximate cause as is cause in fact. Here, the majority concludes that Brian Shirley's simultaneous ingestion of alcohol and multiple prescription pain medications—nearly three years after his industrial injury and after his claim was closed—did not break the chain of causation between the industrial injury and Shirley's death. This conclusion, whether correct or incorrect, addresses the cause in fact element of proximate cause. Left unaddressed in the majority opinion is the element of legal causation, namely whether, given considerations of logic, common sense, and public policy, liability should attach as a matter of law. Here, legal causation is not present.

¶35 Moreover, I believe that cause in fact is absent as well. I cannot accept as rational the conclusion that it was foreseeable that a back injury of this nature would inexorably result in the injured workman abusing the pain killers prescribed for his treatment while simultaneously abusing alcohol. That this may occur altogether too frequently does not alter the fact that it is the abuse that gives rise to the risk of death, not the injury and treatment. For both of these reasons, I dissent.

¶36 Proximate cause consists of two elements: cause in fact and legal causation.[13] Unlike cause in fact, legal causation "rests on policy considerations as to how far the consequences of [a] defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact."[14] As Professor William Prosser observes, the concept of legal causation is intertwined with the concept of duty, the relevant question being: " '[W]as the defendant under a duty to protect the plaintiff against the event which did in

---

[13] *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 475-76, 656 P.2d 483 (1983).

[14] *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985).

fact occur?' "[15] The answer to this question involves considerations of " 'logic, common sense, justice, policy, and precedent.' "[16] Where, in light of these considerations, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability, the essential element of legal causation is absent.[17]

¶37 Here, although it speaks of "proximate cause," the majority addresses only the cause in fact element of proximate cause.[18] The majority addresses none of the policy considerations that must be addressed in connection with a determination as to the existence of legal causation. These policy considerations dictate that the Department of Labor and Industries' liability should not be extended to require the payment of survivor benefits under the circumstances presented here.

¶38 Shirley sustained the industrial injury in 2004. His claim was closed the following year. At the time the claim was closed, no medical professional had prescribed the pain medications that were in his system at the time of his death. Shirley never sought to reopen his claim and died in May 2007. Dr. Chester Jangala treated Shirley after his claim was closed in 2005 and prescribed the pain medications Shirley ingested. Most of the medications Dr. Jangala prescribed were to treat Shirley's industrial injury.[19]

¶39 It is beyond reasonable possibility that Dr. Jangala directed Shirley to take all the prescribed medications at

---

[15] *Hartley*, 103 Wn.2d at 779 (quoting WILLIAM M. PROSSER, HANDBOOK OF THE LAW OF TORTS § 42, at 244 (4th ed. 1971)).

[16] *Hartley*, 103 Wn.2d at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).

[17] *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 612, 257 P.3d 532 (2011).

[18] For example, the majority states that the sole issue "is whether Mr. Shirley's ingestion of a legal amount of alcohol simultaneously with multiple prescription medications constituted an intervening act that broke the causal chain between his original industrial injury and his death." *See* majority at 879. This is a question of cause in fact, not legal causation.

[19] Dr. Jangala prescribed alprazolam "in the distant past" as an antianxiety medication. Jangala Dep. at 13.

the same time. And, given Dr. Jangala's testimony that he was fairly certain that he advised Shirley not to drink alcohol while taking the medications because he routinely so advised his patients, it cannot be said that Dr. Jangala directed Shirley to drink alcohol at the same time he took the combination of pain medications. Rather, Shirley's ingestion of a cocktail of various pain medications, at least two in greater than therapeutic amounts,[20] and his simultaneous ingestion of alcohol were Shirley's own deliberate, volitional acts.

¶40 Further, I disagree with the majority's conclusion that Shirley's deliberate ingestion of a combination of prescription medication along with alcohol did not break the chain of causation between Shirley's industrial injury and his death. " 'Cause in fact [is] "but for" causation, events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred.' "[21] A superseding cause is an intervening act that breaks the sequence and relieves a defendant from liability. To be a superseding cause, an intervening act must be one that is not reasonably foreseeable.[22]

¶41 Here, it was not reasonably foreseeable that Shirley would ingest several varieties of prescription pain medications at the same time when clearly he was not directed or advised to do so by a medical care professional. Nor was it reasonably foreseeable that he would act contrary to his physician's admonition not to drink alcohol while taking the medications. Shirley's deliberate acts, in contravention of his physician's directions and common sense, were a superseding cause that broke the chain of causation between his industrial injury and his death.

---

[20] The level of oxycodone in Shirley's system at the time of the autopsy was above the therapeutic range (0.13 milligrams per liter), and the level of citalopram was three times the level considered therapeutic (0.43 milligrams per liter).

[21] *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008) (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999)).

[22] *State v. Roggenkamp*, 115 Wn. App. 927, 945, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005).

¶42 I would reverse the trial court's order denying the Department's motion for summary judgment and affirming the grant of survivor benefits to Shirley's widow.

After modification, further reconsideration denied December 12, 2012.

Review denied at 177 Wn.2d 1006 (2013).