[No. 16765-8-III.    Division Three.    September 10, 1998.]

ESTELLA ROMO, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

---

[9]*See Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992).

*George J. Schwab II* of *Calbom & Schwab*; and *Melton L. Crawford* and *Timothy K. Ford* of *MacDonald, Hoague & Bayless*, for appellant.

*Christine O. Gregoire, Attorney General*, and *John R. Wasberg, Assistant*, for respondent.

KATO, J. — Estella Romo appeals a superior court order affirming a decision of the Department of Labor and Industries to suspend her worker's compensation benefits because of her refusal to submit to a medical examination. She contends there is an unresolved factual question whether she had good cause to refuse the exam. We disagree and affirm.

Ms. Romo was injured at her workplace on November 10, 1988. She began receiving benefits on January 4, 1989. As required by the Department, she submitted to medical evaluations in August 1989, February 1990, January 1991, March 1992, and November 1992. Psychiatric evaluations during that time indicated Ms. Romo suffered from somatization disorder and either post-traumatic stress disorder or dysthymia, all of which were causally related to the workplace injury. The examining psychiatrist recommended psychotherapy.

In a letter dated May 1, 1993, the treating psychologist informed the Department that Ms. Romo had appeared for three sessions, but he had stopped the treatment because

she was not motivated to pursue it. The Department's claims unit supervisor decided another medical evaluation would be in order.

Ms. Romo was examined by a three-doctor panel on January 13, 1994. The orthopedist and neurologist concluded Ms. Romo's condition was fixed and stable so no further treatment was required. All three doctors, including a psychiatrist, concluded Ms. Romo could return to work.

Consistent with its standard policy, the Department asked Ms. Romo's treating physician, Dr. Conrado DeLeon, to comment on the panel's evaluation. Dr. DeLeon disagreed in part with the panel's conclusion; he stated Ms. Romo had a decreased range of motion, real pain, and some type of somatization disorder. Dr. DeLeon stated Ms. Romo was not malingering; he recommended an independent psychiatric evaluation and a referral to a pain clinic.

Despite this disagreement, the Department accepted the panel's evaluation and closed the case. Ms. Romo protested the closure in May 1994. The Department held the closure in abeyance and reassumed jurisdiction.

Ms. Romo's attorney informed the Department by letter that she would not attend another panel examination. The Department nevertheless scheduled another examination by a panel of medical examiners, including a psychiatrist, on July 15 and 27, 1994. Ms. Romo's attorney informed the Department she would not attend the examinations because she had undergone an examination in January 1994 and there was no reason to believe her condition had changed since that time.

Ms. Romo did not appear for the examination, and the Department responded with a letter stating Ms. Romo's benefits would be suspended if she did not respond within 30 days. Ms. Romo's attorney responded that she would not attend another panel examination until the Department provided a good-cause explanation why one was required. The Department extended the review period for an additional 90-day period and scheduled another panel examination on September 16, 1994. Ms. Romo informed

the Department by letter that she would not attend. In October 1994, the Department again warned Ms. Romo that her refusal would result in suspension of benefits; she again refused. The Department issued an order suspending her benefits on November 4, 1994.

Ms. Romo appealed the suspension to the Board of Industrial Insurance Appeals. After a hearing, an administrative appeals judge issued a proposed decision and order reversing the suspension. The administrative judge's decision was based primarily on his conclusion that a worker is entitled to request a good-cause "explanation from the Department as to why a further examination is necessary for the processing of the worker's case."

The Board rejected the administrative judge's proposed decision and affirmed the suspension. The Board concluded the administrative judge had misinterpreted its precedent in *In re Edwards*, No. 90 6072, Bd. of Indus. Ins. Appeals (June 4, 1992) as requiring the Department to provide good cause for ordering a medical examination:

> The authority of the Department to schedule medical examinations *does not initially depend on a showing of good cause by the Department.* Presumptively, a worker should attend a properly scheduled medical examination unless "good cause" exists to support not attending.

> In this appeal, Ms. Romo asserts only that the examinations scheduled by the Department were not necessary, not that she had good cause not to attend. Ms. Romo did not testify or otherwise present affirmative evidence of any personal impediment to her attendance at the examinations. Neither did Ms. Romo present any evidence that the examiners who were to conduct the examinations were incapable of conducting a fair and independent medical examination or that they were motivated to be other than fair. In short, Ms. Romo did not present a prima facie case that she had any cause not to attend the examination, much less a showing of good cause for failure to do so.

> Ms. Romo merely challenges the Department's authority to schedule what she alleges is a needless examination. It would

be consistent with our holding in *Edwards* that a truly unwarranted examination would constitute good cause not to attend. Further, applying *Edwards*, that if Ms. Romo could establish a prima facie case that the examination was unwarranted, we would need to weigh the interests of the Department in ordering the examination. However, Ms. Romo failed to establish that the Department's scheduling of a further examination in her case was unwarranted.

(Footnote omitted.)

Ms. Romo appealed the Board's decision to the superior court and demanded a jury trial. The Department moved for summary judgment, which the superior court granted. Ms. Romo now appeals the superior court's order.

Judicial appeal of a decision by the Board of Industrial Insurance Appeals is de novo, but is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 800 n.4, 953 P.2d 800 (1998); *Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993); *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 828 P.2d 1138 (1992). The Board's findings and conclusions are considered prima facie correct, although "[t]he superior court may substitute its own findings and decision for the Board's if it finds, 'from a fair preponderance of credible evidence,' that the Board's findings and decisions are incorrect." *McClelland*, 65 Wn. App. at 390 (quoting *Weatherspoon v. Department of Labor & Indus.*, 55 Wn. App. 439, 440, 777 P.2d 1084, *review denied*, 113 Wn.2d 1030 (1989)). Either party is entitled to a jury trial to resolve factual disputes. RCW 51.52.115. A superior court's review is subject to the civil appeal rules, including those for summary judgment. RCW 51.52.140; *McClelland*, 65 Wn. App. at 390.

On review of a summary judgment order, an appellate court's inquiry is the same as the superior court's. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993); *see Fankhauser*, 121 Wn.2d at 308. Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the party seeking summary judgment to establish its right to judgment as a matter of law, and the court must consider facts and reasonable inferences from the facts in favor of the nonmoving party. *Our Lady of Lourdes*, 120 Wn.2d at 452.

██ ██ RCW 51.32.110 provides in pertinent part:

(1) Any worker entitled to receive any benefits or claiming such under this title shall, if requested by the department . . . , submit himself or herself for medical examination, at a time and from time to time, at a place reasonably convenient for the worker and as may be provided by the rules of the department . . . .

(2) If the worker refuses to submit to medical examination, or obstructs the same, . . . the department . . . may suspend any further action on any claim of such worker so long as such refusal, obstruction, noncooperation, or practice continues and reduce, suspend, or deny any compensation for such period: PROVIDED; That the department . . . shall not suspend any further action on any claim of a worker or reduce, suspend, or deny any compensation if a worker has good cause for refusing to submit to or to obstruct any examination, evaluation, treatment or practice requested by the department or required under this section.

*See* WAC 296-14-410.

By regulation, the Department has provided that independent medical examinations generally are requested for one of the following reasons:

(a) To establish a diagnosis. Prior diagnoses may be controversial or ill-defined;

(b) To outline a program of rational treatment, where treatment or progress is controversial;

(c) To establish medical data from which it may be determined whether the medical condition is industrially acquired, or unrelated to industrial work activities;

(d) To determine the extent and duration of aggravation of a preexisting medical condition by an industrial injury or exposure;

(e) To establish when the accepted medical condition has reached maximum benefit from treatment;

(f) To establish a percentage rating of any permanent disability, based on the loss of body function or the category rating when maximum recovery is reached; or

(g) To determine the medical indications for reopening of a claim for further treatment on the basis of aggravation of an accepted condition, based on objective findings.

WAC 296-23-255.

The Department appears to argue in part that it has virtually unbridled discretion to require a medical exam under this statute. But WAC 296-23-255 itself places some limitation on the Department's discretion. Moreover, the Legislature has limited the Department's discretion by providing that it may not suspend benefits to a worker who refuses to attend an examination for good cause. RCW 51.32.110(2).

In a slightly different context, this court recently addressed what constitutes good cause under RCW 51.32.110(2). *See Garcia v. Department of Labor & Indus.*, 86 Wn. App. 748, 939 P.2d 704, *review denied*, 133 Wn.2d 1011 (1997). The worker in that case was injured at work and received benefits, but then moved permanently to Mexico to care for his orphaned niece and nephew; he thus was unavailable for vocational rehabilitation. *Id.* at 750. We agreed with the superior court's conclusion the worker did not have good cause to refuse the rehabilitation:

> There is no finding that Mr. Garcia is obligated to care for his sister's children. The finding is that he feels he is responsible, not that he cannot return to the United States because of his responsibility. Neither this finding nor his frustration with the Department's delays supports the legal conclusion of good cause.

*Id.* at 752.

The Department insists the good cause determination must be based on circumstances personal to the worker, while Ms. Romo argues an unnecessary examination itself is "good cause," regardless of its effect on the individual worker.

Decisions of the Board of Industrial Insurance Appeals are not precedential. *Walmer v. Department of Labor & Indus.*, 78 Wn. App. 162, 167, 896 P.2d 95, *review denied*, 128 Wn.2d 1003 (1995). Nevertheless, the Board's decision in *Edwards* persuasively indicates the Department's discretion to order medical examinations is not unlimited. In that case, the worker, like Ms. Romo, protested the Department's closure of his claim, after which the Department held the closure in abeyance and ordered another medical examination, which the worker refused to attend. The Board observed:

> Whether good cause exists in a given case will depend on a variety of factors that require balancing from one instance to the next. Among those factors that may be considered are the claimant's physical capacities, sophistication, circumstances of employment, family responsibilities, proven ability or inability to travel, medical treatment and other relevant concerns, not the least of which is the expectation of a fair and independent medical evaluation.

> Balanced against this are the interests of the Department and its statutory responsibility to act in attempting to resolve disputes at the first-step administrative level. This may include the need to resolve conflicting medical documentation, the location of willing and qualified physicians, the length of time before a physician is available to perform an examination, and the comparative expense of such. Neither of the above lists of factors are exhaustive.

*In re Edwards* at 3-4. As the Board has noted in its decision in this case, a worker would have good cause to refuse to attend a truly unwarranted examination. An unwarranted request suggests harassment, which reduces a worker's expectation of a fair and independent medical evaluation. This interpretation is persuasive and consistent

with the remedial purpose of the Industrial Insurance Act. RCW 51.12.010; *Black v. Department of Labor & Indus.*, 131 Wn.2d 547, 555, 933 P.2d 1025 (1997); *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987). The circumstances of the requested examination, even beyond those personal to the worker, should be relevant to determining whether the worker has good cause to refuse to attend. As the Board has held, the good cause determination thus should involve a balancing of the worker's individual circumstances and the Department's interests in requiring the examination.[1]

This interpretation is consistent with this court's observation in *Garcia*, 86 Wn. App. at 751, that the good cause determination is a mixed question of law and fact. The ultimate determination of good cause is a legal conclusion, based on subsidiary findings by the trier of fact. *Id.* at 752 n.1.

Ms. Romo argues she was entitled to a jury trial because the good cause determination involves factual determinations. She undeniably is entitled to demand that a jury resolve any genuine factual questions. RCW 51.52.115. But summary judgment is appropriate if there are no genuine issues of material fact. CR 56(c). The decisive issue here, then, is whether there are any genuine factual disputes related to the question of Ms. Romo's good cause for refusing the medical examinations.

The Department's claims consultant identified two

[1]The Department argues this interpretation would overwhelm the worker's compensation system with quasi-judicial or judicial factfinding hearings. It relies on *Sauceda v. Department of Labor & Indus.*, 917 F.2d 1216 (9th Cir. 1990), in which the federal court considered whether the Department was required by due process to conduct an evidentiary hearing before suspending benefits under RCW 51.32.110. The court held no hearing was necessary, in part because it concluded "the public's interest to see that disability benefits are paid only to claimants who are disabled outweighs the need for additional pre-termination procedures." *Sauceda*, 917 F.2d at 1219. This reasoning does not apply here. Ms. Romo is not challenging the Department's failure to conduct an evidentiary hearing before suspending her benefits. In any case, a worker whose benefits have been suspended has a right to appeal the decision both to the Board and to a court. RCW 51.52.060, .110. A factfinder's obligation to balance the worker's and the Department's interests does not impose any additional burdens on the appeal process.

reasons for requesting the examination: (1) to resolve the disagreement between the panel's January 1994 evaluation and the recommendation of Dr. DeLeon, Ms. Romo's attending physician; and (2) to obtain an update on the January 1994 exam, which she believed was not current.

As Ms. Romo points out, the second reason has little merit in light of medical experts' opinions that Ms. Romo's condition was fixed and stable. The claims consultant herself testified she had no reason to believe Ms. Romo's condition had changed at the time of ordering the additional examination. The witness even agreed a worker would have good cause to refuse an examination if there were already a current evaluation and there were no changed circumstances.

But as for the first reason, the Department surely had an interest in resolving the conflict between the panel's January 1994 evaluation and Dr. DeLeon's recommendation. *See* WAC 296-23-255(b). As part of its need to resolve conflicting medical opinions, the Department justifiably believed it needed an additional examination. *See Edwards* at 3-4.

Balanced against this need, however, is Ms. Romo's desire to avoid what she considered an unnecessary examination. In her letters to the Department, Ms. Romo stated she believed the scheduled examinations were redundant and unnecessary and the Department had failed to provide good cause for requiring the examination. She plainly misinterpreted RCW 51.32.110, which places upon the worker the burden of proving good cause to refuse an examination. A worker's frustration alone is not good cause. *Garcia*, 86 Wn. App. at 752.

At the Board hearing, Ms. Romo failed to articulate any other reason for her refusal. Her brief here identifies two other reasons. First, she relies on a psychiatric evaluation written in November 1992 in which she reported her pain made it difficult to travel outside her home. Even if this evaluation remained accurate almost two years later, the examiner at that time reported she was able to leave her

home to attend doctors' appointments. This evidence does not establish good cause to refuse a medical examination.

Second, Ms. Romo argues the circumstances of the request for another examination gave her good reason to suspect the Department's motives and to doubt the fairness of the examination she would receive. But Ms. Romo did not testify and did not present any other evidence that her refusal was based on a fear that the scheduled examiner was biased or that the Department was "doctor shopping." Nor is there any evidence in the record to suggest the scheduled examination would have been unobjective. Any such evidence would be relevant to a hypothetical worker's interest in a fair process, and thus to the determination whether the worker had good cause to refuse an examination. But Ms. Romo failed to present any evidence suggesting examiner bias or "doctor shopping." Thus, there was no genuine issue as to any material fact, and the superior court properly determined summary judgment was appropriate.

On balance, the Department had a clear interest in resolving the disagreement about Ms. Romo's condition. Ms. Romo has failed to provide any good cause for refusing the Department's requested examination. The superior court's order is affirmed.

SCHULTHEIS, C.J., and KURTZ, J., concur.