
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JUSTIN M. POLLARD, | ) | |
| | ) | No. 34757-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON; and KAISER | ) | |
| ALUMINUM & CHEMICAL CORP., | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — The Department of Labor and Industries suspended Justin

Pollard's worker's compensation benefits at the request of his self-insured employer,

Kaiser Aluminum and Chemical Corporation, after Mr. Pollard refused to attend an

independent medical examination (IME) scheduled by Kaiser. Following his

unsuccessful appeal to the Board of Industrial Insurance Appeals and the superior court,

Mr. Pollard asks us to find that he had good cause for refusing to attend the IME and to

reverse.

His argument is predicated on his having been denied his right to transfer

treatment to a new attending physician of his choice. The Board and the superior court

correctly recognized that he never submitted the claimed denial of that right to the

Department for decision, however. The fact that he was frustrated by a claim management dispute with Kaiser was an issue on appeal. But his asserted right to the transfer was not. We affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

In September 2010, while employed by Kaiser, Justin Pollard suffered a workplace injury when he attempted to toss an oversized metal sheet. A workers' compensation claim was allowed for bilateral shoulder conditions.

Mr. Pollard received physical therapy and on February 21, 2011, underwent rotator cuff surgery on his left shoulder performed by Dr. Tycho Kersten, an orthopedic surgeon. Mr. Pollard had been referred to Dr. Kersten by Dr. Jeffrey Pedersen, his family physician.

Mr. Pollard was last seen by Dr. Kersten on November 26, 2013. On January 14, 2014, Dr. Kersten spoke by phone with Mr. Pollard about his review of an MRI[2] of the left shoulder, telling Mr. Pollard that he did not recommend further surgery but only a continuation of conservative treatment. On January 31, 2014, Dr. Kersten reported to Kaiser that he recommended no further curative treatment, and that Mr. Pollard's condition was medically fixed with a permanent impairment. Dr. Kersten does not

---

[1] The administrative record (AR) provided by the Board was not consecutively paginated. It exists in our record in PDF (portable document format) form. For citation purposes, we will rely on the PDF's electronic page numbers.
[2] Magnetic resonance imaging.

2

perform permanent impairment ratings and indicated to Kaiser that someone else should be engaged to perform an IME and arrive at the impairment rating needed to close the claim.

Based on Dr. Kersten's report, Kaiser scheduled an IME for Mr. Pollard in Spokane, notifying Mr. Pollard's lawyer that the IME was scheduled with Dr. David Bauer for March 28, 2014.[3] Kaiser was notified by Mr. Pollard's lawyer about a week before the examination date that Mr. Pollard had moved, now resided in Las Vegas, and would not appear for an IME in Spokane. Although Kaiser originally took the position it would pay for Mr. Pollard's travel to Spokane and expected him to keep the appointment, it later relented and identified a physician who could perform the IME in Henderson, Nevada, which is 30 minutes from Mr. Pollard's home.

In the meantime, Mr. Pollard's lawyer told him to look for an orthopedic specialist in Las Vegas. In March and May 2014, Mr. Pollard's lawyer asked that Kaiser transfer Mr. Pollard's care to Desert Orthopedics, a clinic in Las Vegas selected by Mr. Pollard. The requests were denied. Mr. Pollard did not appeal denial of the transfer authorization to the Department.

---

[3] To fulfill its claim management responsibilities as a self-insurer, Kaiser relies on a third-party administrator (Broadspire) that works, in turn, with a company providing nurse and other case management services (Occupational Health Solutions). For simplicity, we refer to Kaiser's agents acting on its behalf as "Kaiser."

On April 22 and May 1, 2014, Kaiser mailed letters to Mr. Pollard informing him that it had scheduled an IME with Dr. Aubrey Swartz in Henderson on May 27, 2014. Five days before the scheduled appointment, Mr. Pollard's lawyer notified Kaiser that Mr. Pollard would not attend because Kaiser had not authorized his examination by a new physician in Las Vegas. Mr. Pollard did not attend the IME.

On June 6, 2014, Kaiser sent a letter to Mr. Pollard's lawyer asking for an explanation why Mr. Pollard failed to attend the IME on May 27. The letter informed Mr. Pollard that his industrial insurance benefits could be suspended if no written explanation demonstrating "good cause" for failing to attend the examination was provided within 30 days. Clerk's Papers (CP) at 62-63.

Receiving no response from Mr. Pollard, Kaiser asked the Department for authorization to suspend his benefits. On September 5, 2014, the Department entered such an order and notified Mr. Pollard that his benefits were being suspended for failure to attend the IME. Mr. Pollard timely protested the suspension, which was affirmed by the Department. Mr. Pollard appealed to the Board of Industrial Insurance Appeals.

In the hearing before an industrial appeals judge (IAJ), Mr. Pollard asked that the scope of the appeal be enlarged to include his request for a penalty against Kaiser for refusing to allow Mr. Pollard to change physicians. Mr. Pollard had allegedly requested a

4

penalty in his protest,[4] and he argued to the IAJ that by failing to address his request the Department had implicitly denied it. The IAJ declined to expand the scope of the appeal. Mr. Pollard did not seek a further order from the Department addressing his request for a penalty nor does he assign error on appeal to the IAJ's ruling on the scope of his appeal.

Following the hearing, the IAJ issued a proposed decision and order that affirmed the suspension of Mr. Pollard's benefits. In response to a petition for review filed by Mr. Pollard, the Board affirmed, adopting the IAJ's proposed decision and order as its own. Judicial review by the superior court resulted in a further affirmance of the suspension of benefits. Mr. Pollard appeals.

## ANALYSIS

Title 51 RCW requires an injured worker to submit to an IME requested by the worker's self-insured employer. RCW 51.32.110(1). If the worker refuses to submit to such an examination, the self-insurer, with approval of the Department and notice to the worker, may suspend further action on the worker's claim. It may also deny compensation for the period in which the refusal to submit to the IME continues, "PROVIDED," as relevant here, "That the . . . self-insurer shall not [suspend action or deny compensation] if a worker has good cause for refusing to submit to . . . any examination." RCW 51.32.110(2).

---

[4] Mr. Pollard's protest is not a part of the record on appeal.

In *Romo v. Department of Labor & Industries*, this court approved a balancing test for making the "good cause" determination that had been announced by the Board several years earlier, holding that "'whether good cause exists in a given case will depend on a variety of factors that require balancing from one instance to the next.'" 92 Wn. App. 348, 356, 962 P.2d 844 (1998) (quoting *In re Edwards*, No. 90 6072, at 2 (Wash. Bd. Indus. Ins. Appeals June 4, 1992), http://www.biia.wa.gov/SDPDF/906072.pdf). Continuing to quote *Edwards*, *Romo* identified relevant factors:

> "Among those factors that may be considered are the claimant's physical capacities, sophistication, circumstances of employment, family responsibilities, proven ability or inability to travel, medical treatment and other relevant concerns, not the least of which is the expectation of a fair and independent medical evaluation.
> Balanced against this are the interests of the Department and its statutory responsibility to act in attempting to resolve disputes at the first-step administrative level. This may include the need to resolve conflicting medical documentation, the location of willing and qualified physicians, the length of time before a physician is available to perform an examination, and the comparative expense of such. Neither of the above lists of factors are exhaustive."

*Id.* (quoting *Edwards*, No. 90 6072, at 2-3). *Romo* also held, quoting this court's earlier decision in *Garcia v. Department of Labor and Industries*, that a worker's frustration with delays in management of his claim would not support the legal conclusion of good cause. *Romo*, 92 Wn. App. at 355 (quoting *Garcia*, 86 Wn. App. 748, 752, 939 P.2d 704 (1997)).

6

Judicial review of decisions of the Board is not governed by the administrative procedure act.  Instead, Title 51 RCW generally applies "the practice in civil cases" to appeals, and expressly provides that "[a]ppeal shall lie from the judgment of the superior court as in other civil cases."  RCW 51.52.140.  Accordingly, we review the superior court's decision, not the Board's.  *Dep't of Labor & Indus. v. Slaugh*, 177 Wn. App. 439, 444, 312 P.3d 676 (2013); RCW 51.52.110.

Whether a worker has good cause to refuse to attend an IME is a mixed question of fact and law.  *Garcia*, 86 Wn. App. at 751.  We first review whether substantial evidence supports the superior court's factual findings and then determine, de novo, whether those factual findings support the superior court's legal conclusion that a worker did not have good cause.  *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996); *Garcia*, 86 Wn. App. at 751.  The burden is on a worker to demonstrate good cause for not appearing for a medical examination requested by a self-insured employer.  RCW 51.32.110(2); *Andersen v. Dep't of Labor & Indus.*, 93 Wn. App. 60, 61, 967 P.2d 11 (1998).

The dispositive issue in this appeal is whether Mr. Pollard's asserted right to transfer his care to a new attending physician of his choice is a factor that could and should have been weighed in determining whether he had good cause to refuse to attend the IME.  The Department argues that it is not, contending that "the two issues are independent from each other as an independent medical examiner does not consult with

7

the attending physician." Br. of Resp't Department at 1.[5] The Department contends that whether good cause exists depends on a balance of only factors that are related to the examination itself. *Id.*

We are not prepared to adopt that view. But we do conclude that Mr. Pollard's argument on this critical issue is predicated on his asserted right to transfer treatment—an asserted right that was disputed and that he never asked the Department to resolve. The Board and the superior court did not fail to weigh his right to a transfer of treatment, as Mr. Pollard contends. Instead, they recognized, correctly, that whether he had a right to a transfer was not before them on appeal.

*Mr. Pollard and Kaiser dispute whether Mr. Pollard's request for transfer to a new attending physician was reasonable—a dispute that Mr. Pollard never asked the Department to resolve*

RCW 51.36.010(2)(a) provides that a worker entitled to compensation under Title 51 RCW shall receive "proper and necessary medical and surgical services at the hands of a physician or licensed advanced registered nurse practitioner of his or her own choice, if conveniently located, except as provided in (b) of this subsection."[6] "Proper and

---

[5] Elsewhere the Department and Kaiser have argued that the report provided by an independent medical examiner is only evidence, subject to challenge by the worker, and is given no special consideration. It is only the testimony of an attending physician that is entitled to special consideration by the trier of fact. *Clark County v. McManus*, 185 Wn.2d 466, 475-77, 372 P.3d 764 (2016).

[6] Paragraph (b) of the subsection limits workers' choice of practitioner to network providers for the most part, once a provider network is established in the worker's geographic area. RCW 51.36.010(2)(b).

necessary medical and surgical services" has been defined to mean health care services

that are

> (a) Reflective of accepted standards of good practice, within the scope of practice of the provider's license or certification;
>
> (b) Curative or rehabilitative. . . ;
>
> (c) Not delivered primarily for the convenience of the claimant, the claimant's attending doctor, or any other provider; and
>
> (d) Provided at the least cost and in the least intensive setting of care consistent with the other provisions of this definition.

WAC 296-20-01002 (*cited with approval in Rogers v. Dep't of Labor & Indus.*, 151 Wn.

App. 174, 182, 210 P.3d 355 (2009)).

Turning to Department regulations, WAC 296-20-065 identifies seven exceptions

to a worker's free choice of treating provider and reads a further "reasonableness"

requirement into RCW 51.36.010(2). The regulation states that, apart from the seven

exceptions, "no *reasonable* request for transfer to a network provider will be denied."

WAC 296-20-065 (emphasis added). In *In Re: Maria Gonzalez*, designated as a

"significant decision" by the Board,[7] the Board held that "the mere fact that [the worker]

was unhappy with [her doctor], who had performed the surgery and said that she was

ready to go back to work, is not sufficient for a transfer of her care to another physician";

---

[7] The Board publishes its significant decisions and makes them available to the public. "These decisions are nonbinding, but persuasive authority for this court." *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005).

elsewhere, the Board found that Ms. Gonzalez's request to authorize the transfer of her care "was not reasonable, and authorization of the transfer by the Department was inappropriate." No. 97 0261, at 7-8, 11 (Wash. Bd. Indus. Ins. Appeals Apr. 7, 1998), http://www.biia.wa.gov/SDPDF/970261.pdf.

Mr. Pollard's position is that because he no longer lived in Spokane he had a right to transfer his care to a physician in Las Vegas, and Kaiser's refusal to authorize the transfer of care constituted good cause to refuse to submit to an IME.[8] He points out that his request for a transfer of physicians was not subject to any of the regulatory exceptions provided by WAC 296-20-065. He contends it was proper, necessary, and reasonable

---

[8] Before the Department and the Board, Mr. Pollard also argued that his fear that Drs. Bauer and Swartz would not conduct a fair IME constituted good cause for refusing to attend. But in petitioning for review and on appeal, he treats his concern about the IME's fairness as evidence relevant to his reasonable need to transfer to a new attending physician rather than as independently-sufficient "good cause." *See, e.g.*, CP at 3 (Pl.'s Trial Br. at 2) ("Issue" identification) *and* Court of Appeals oral argument, *Pollard v. Dep't of Labor & Indus.*, No. 34757-5-III (Dec. 7, 2017), at 9 min., 38 sec. to 9 min., 50 sec. (on file with the court) ("[H]e did not have an expectation of a fair independent medical exam. And it's *because* he did not have an attending physician of his own choice, which was his statutory entitlement." (Emphasis added)).

If Mr. Pollard's concern that the IME would not be fair and independent remains an issue, we still affirm the superior court. The IAJ excluded anecdotal hearsay critical of Dr. Swartz, and that ruling is not challenged on appeal. The IAJ found that "Dr. Swartz is an unknown examiner" who "has never been used by Kaiser to perform an IME" and "[t]here is no evidence in the record that he is unfair and/or biased toward Mr. Pollard in particular or injured workers in general." AR at 28-29. The superior court concluded that the Board's decision was "correct" and "affirmed [it] in all respects." CP at 41. Substantial evidence supports the IAJ's findings that Mr. Pollard failed to present admissible evidence that Dr. Swartz could not be expected to perform a fair and independent medical examination.

because he needed to be evaluated for injury to his right shoulder and an injury-caused worsening of his depression, and needed a continuing relationship with a physician who could help him navigate the claim adjudication process and explain IME report results.

But whether the transfer of treatment was necessary and reasonable was disputed, as were the underlying facts. At the administrative hearing, Kaiser's nurse case manager assigned to Mr. Pollard's claim testified that Mr. Pollard's medical records indicated he was being treated for depression *before* his workplace injury, the records reflected no worsening of his depression caused by the injury, and they indicated that Dr. Kersten had evaluated Mr. Pollard's right shoulder and found it to be essentially normal. Kaiser contends that Dr. Kersten, an orthopedic surgeon of Mr. Pollard's choice who had treated him for almost three years, remained available, and because he concluded that Mr. Pollard's condition was medically fixed and stable with no further treatment required, transfer to a Las Vegas-based physician was unnecessary. Kaiser suggests that the real reason Mr. Pollard wanted to transfer to a new attending physician was because Dr. Kersten concluded his claim was ready for closure, which would terminate Mr. Pollard's benefits.

Under Title 51 RCW, "[w]here a dispute arises from the handling of any claim before the condition of the injured worker becomes fixed, the worker . . . may request the department to resolve the dispute." RCW 51.32.055(6). The statute provides that the Department shall resolve the dispute by issuing an order in accordance with RCW

11

51.52.050. *Id.* Such an order may then be appealed. RCW 51.52.050(2)(a). If the Department fails to act, a party can seek a writ of mandamus and is, in fact, required to do so as part of its exhaustion of remedies. *Dils v. Dep't of Labor & Indus.*, 51 Wn. App. 216, 220, 752 P.2d 1357 (1988).

Mr. Pollard did not ask the Department to resolve his and Kaiser's dispute over whether he had a right to transfer treatment to a Las Vegas-based physician of his choice. If he had, the Department states it would have considered the appropriate criteria and issued an order deciding the issue. Br. of Resp't Department at 15. Such an order, and further orders following any protest, appeal and judicial review, would address and resolve the parties' dispute over the reasonableness of Mr. Pollard's request. Such orders would provide us with findings of fact on the facts that are disputed; findings we would then review for substantial evidence. As an appellate court, we do not weigh evidence and do not find facts. *State v. Bennett*, 180 Wn. App. 484, 489, 322 P.3d 815 (2014) (citing *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959)).

Title 51 RCW provides that a party appealing a decision of the Board to the superior court may raise "only such issues of law or fact . . . as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board." RCW 51.52.115. The jurisdiction of both the Board and the superior court are limited to reviewing matters that were properly before the Department and actually

12

decided by it. *Hanquet v. Dep't of Labor & Indus.*, 75 Wn. App. 657, 663, 879 P.2d 326 (1994) (citing cases).

The two issues that Mr. Pollard identifies on appeal *presume* that his right to transfer treatment to Desert Orthopedics was before the Board and superior court and should have been weighed.[9] He faults the Board and the superior court for failing to place his right to treatment by Desert Orthopedics on his side of the *Romo* balance scale in deciding the issue of "good cause." But both the Board and the superior court recognized that the Department was never asked to decide and never did decide whether he had a right to transfer to Desert Orthopedics for treatment that was proper, necessary, and reasonable. They did not weigh Mr. Pollard's right to a physician of his choice under RCW 51.36.010(2)(a) because it was not part of the appeal.

Mr. Pollard's frustration with the treatment transfer dispute with Kaiser was in evidence. It was a basis for argument on appeal. But as this court affirmed in *Romo*, frustration with claims management is not good cause for refusing to attend an IME. 92 Wn. App. at 355 (citing *Garcia*, 86 Wn. App. at 752).

---

[9] The first issue identified by Mr. Pollard asks whether, given his circumstances, he "retain[ed] the right to choose a conveniently located attending physician." Br. of Appellant at 3. His second issue presumes he was denied his statutory right to a conveniently located attending physician and asks whether that constitutes good cause for refusing to attend an IME. *Id.* at 4.

No. 34757-5-III
*Pollard v. Dep't of Labor & Indus.*

Affirmed.[10]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Korsmo, J.

---

[10] Because he is unsuccessful on appeal, we deny Mr. Pollard's request for an award of attorney fees.

14