# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALFREDO SUAREZ, | No. 55377-5-II |
| Appellant, | |
| v. | |
| MASCO CORPORATION, TOPBUILD; and DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, A.C.J.—Alfredo Suarez was injured while working for Masco Corporation, TopBuild (Masco), and he applied for workers' compensation benefits. To administer Suarez's claim, Masco requested that Suarez attend multiple independent medical examinations. Suarez's counsel objected to one of the examinations, so Suarez did not attend. As a result, the Department of Labor and Industries suspended Suarez's time-loss benefits. Both the Board of Industrial Insurance Appeals and the superior court affirmed the suspension.

On appeal, Suarez argues that he had good cause for failing to attend the medical examination and that the superior court erred because it failed to properly weigh all of the evidence. We hold substantial evidence supports the superior court's factual findings, and those findings support the superior court's conclusions that Suarez was required to submit to the examination and lacked good cause to refuse under RCW 51.32.110. Accordingly, we affirm.

FACTS

In 2012, while employed by Masco,[1] Suarez injured his neck and right shoulder. Masco is a self-insured employer.

Suarez opened a claim with the Department and sought benefits. A third party claim administrator requested that Suarez attend several independent medical examinations: one in November 2013 with Dr. Clarence Fossier, an orthopedic surgeon; one in November 2014 with Dr. John Thompson, another orthopedic surgeon; and one in January 2015 with Dr. Thomas Rosenbaum, a neurosurgeon. Suarez attended all three of these examinations.

One of Suarez's medical concerns was adhesive capsulitis, or "frozen shoulder," causing pain and limiting movement in both of his shoulders. Certified Appeal Board R. (CBR) at 325. Fossier opined that Suarez's frozen right shoulder was "causally related to the industrial injury on a more-probable-than-not basis." CBR at 318. In contrast, Thompson reported that "the impairment of his shoulders is 100% due to diabetic frozen shoulder and not related to his work injury." CBR at 337. Rosenbaum did not believe the pain in Suarez's left shoulder was related to his industrial injury and attributed it to Suarez's diabetes. But he opted to "defer to orthopedic surgery" on whether Suarez's frozen right shoulder was related to Suarez's industrial injury or his diabetes, as well as whether this condition required additional treatment or employment restrictions. CBR at 326-27.

In April 2015, the claim administrator requested that Suarez attend another examination in May with Dr. Joseph Lynch, a third orthopedic surgeon. The letter stated, "We require 7 days

---

[1] At the time, Masco was named Gale Insulation.

notice of canceling or rescheduling exams." CBR at 234. Suarez's counsel promptly sent a letter advising that Suarez would not attend the examination, so the claim administrator "should cancel . . . to avoid a no show fee." CBR at 235. He explained, "On January 30, 2015, you scheduled a medical evaluation with Thomas Rosenbaum, MD, which claimant attended. There is no reason to reschedule [another] medical evaluation less than four months [after] the previous one." *Id.*

Masco's counsel urged Suarez's counsel to reconsider. He advised that Masco would seek to suspend all of Suarez's benefits if he did not attend the examination and explained that the examination was intended to "provide clarity in determining whether the shoulder condition is related" to Suarez's industrial injury. CBR at 236. Moreover, Suarez's primary physician, Dr. Richard Heitsch, was "contending the shoulder condition is related but . . . also acknowledging that [Suarez] might not need more treatment." *Id.*

Suarez did not attend the examination in May 2015 and was assessed a no-show fee. Masco asked Suarez's counsel to "confirm in writing [his] belief as to good cause as to why the evaluation was unreasonable." CBR at 238. Again, Suarez's counsel explained that Suarez "just had a medical evaluation at the request of [Masco] less than four months ago, and it did not seem reasonable that he have another one so soon." CBR at 239.

## I. NO-SHOW FEE HEARING (DOCKET NO. 15 23126)

In July 2015, Masco requested that the Department's claim adjudicator suspend Suarez's benefits and order payment of the no-show fee. Suarez's counsel wrote to the claim adjudicator, explaining that "when the notice came in" for this examination, "it had only been three months since the last medical evaluation, and I objected on that basis." CBR at 242.

During this time, an appeal of Suarez's entitlement to benefits during 2013 and 2014 was pending before the Board. In August, Suarez wrote to the Department's penalty adjudicator, stating, "Employer's attorney has two orthopedic surgeons scheduled to testify before the [Board] who have examined claimant, as well as Thomas Rosenbaum, MD, and claimant has one witness, Richard Heitsch, MD. So this looks like overkill to me to have another orthopedic surgeon available to testify." CBR at 245.

The Department granted Masco's request to reduce Suarez's time-loss benefits by the amount of the no-show fee "because the worker refused or failed to attend the scheduled medical examination . . . without good cause." CBR at 246. However, it "considered withdrawn" Masco's request to suspend Suarez's benefits because Masco's letter did not meet the guidelines for establishing Suarez's noncooperation. CBR at 248. The Department asked Masco to review the guidelines before resubmitting the request.

Suarez protested the no-show fee assessment, arguing he had good cause not to attend the May 2015 examination because he had attended two other examinations in the last six months—one in November 2014 and one in January 2015. The Department reconsidered and reaffirmed its decision, advising, "Not attending an independent medical examination because you previously attend[ed] an examination[] is not considered good cause." CBR at 253.

Suarez appealed. At a hearing before Industrial Appeals Judge Steven Yeager, Suarez's counsel testified that "the basis for objection" to the May 2015 examination with Dr. Lynch was that Suarez "just had an examination within a four-month period." CBR at 270-71. He agreed that this was the reason given to Masco and the Department's claims adjudicator and that he had told the Department's penalty adjudicator "it looked like [Masco was] piling on essentially medical

4

examiners" to be witnesses in the separate, pending appeal of Suarez's 2013 and 2014 benefits. CBR at 273. When specifically asked to articulate his reason for the objection for purposes of establishing good cause, Suarez's counsel stated, "So that was a third examination within a six-month period of time, and I didn't think it was reasonable." CBR at 275.

Masco's counsel then confirmed that one of the issues presented "per the litigation order, is whether or not [Suarez] had good cause for failing to attend" the examination. CBR at 276. Judge Yeager agreed that the issue of good cause appeared to be "encompassed in the department order." *Id.* Masco's counsel concluded, "[I]t's our position that the worker has been noncooperative and that the fee should be assessed; and, in the alternative, if the fee should not be assessed because the attorney had let us know more than seven days in advance, that suspension of benefits would have been the appropriate remedy." CBR at 295. In response, Suarez argued that he was the only party who appealed the Department's order and that the order only assessed a no-show fee; it did not suspend benefits.

In a proposed order and decision, Judge Yeager stated, "It is not within the Board's scope of review to determine whether Mr. Suarez's benefits should be suspended for failing to attend a scheduled examination without good cause." CBR at 117. However, Judge Yeager found that the May 2015 examination was "not an unnecessary examination" and that "Suarez did not otherwise present evidence of good cause to fail to attend." CBR at 121. He concluded that the suspension of benefits was "not within the Board's scope of review," that "Suarez did not have good cause for failing to attend . . . within the meaning of RCW 51.32.110," and that "[b]ecause [Suarez] provided timely notice he would not attend the . . . examination, the self-insured employer is estopped from assessing an examination charge." *Id.*

5

Masco petitioned the Board for review, arguing that Judge Yeager correctly concluded Suarez lacked good cause for failing to attend but incorrectly concluded the Board lacked jurisdiction to suspend Suarez's benefits. In September 2016, the Board denied the petition for review, and Judge Yeager's proposed decision and order became the Board's decision and order. Neither Masco nor Suarez appealed to the superior court.

II. SUSPENSION OF BENEFITS HEARING (DOCKET NO. 17 13423)

In March 2017, the Department suspended Suarez's benefits based on his "failure to submit to, and/or cooperate with a medical examination." CBR at 158. Suarez protested the suspension.

Both Masco and Suarez sought summary judgment, arguing that the prior litigation had resolved this issue. According to Masco, the Board's prior decision and order adopted Judge Yeager's conclusion that, as a matter of law, Suarez was not cooperative and lacked good cause for failing to attend the May 2015 medical examination, and that "triggered the [D]epartment to then say . . . [t]here is a determination that claimant was not cooperative, and so, therefore, the suspension is appropriate." CBR at 185-86. According to Suarez, the Board could not enter an order suspending benefits because Masco never appealed the Department's prior determination not to suspend benefits or the Board's prior decision and order that the suspension of benefits was not within its scope of review. He further argued the finding of fact "that Mr. Suarez did not otherwise present evidence of good cause, does not establish that there was no good cause." CBR at 190.

Industrial Appeals Judge Jeffrey Friedman issued a proposed decision and order stating that although Suarez's "non-attendance" at the May 2015 examination had "previously been litigated," the question of whether his benefits should be suspended was "not decided." CBR at

92-93. He found that the findings of fact and conclusions of law from docket no. 15 23126, the appeal of the no-show fee assessment, were "binding on Mr. Suarez in this appeal" and that "[p]rior to the suspension of benefits, Alfredo Suarez had a full and fair opportunity to explain his reasons for not attending." CBR at 97. Judge Friedman denied Suarez's motion for summary judgment, granted Masco's motion for summary judgment, and affirmed the Department's suspension order.

The superior court reversed, ruling that "the issue of suspension of time loss benefits . . . was not before the [Board] in Docket No. 15 23126, and the Board could not grant summary [judgment] in favor of the self-insured employer, Masco Corporation, in Docket No. 17 13423, on the basis of res judicata, collateral estoppel or issue preclusion." CBR at 58-59. It remanded for "a full evidentiary hearing on the issue of suspension of time loss benefits pursuant to the [Department's 2017] order." CBR at 59.

Judge Friedman presided over this evidentiary hearing in May 2019. The judge admitted all of the parties' prior letters as exhibits, as well as the transcript of the hearing held before Judge Yeager during the appeal of the no-show fee assessment. Judge Friedman sought to clarify the basis for Suarez's objection to attending the May 2015 examination, and Suarez's counsel testified, "I thought that every six months would be an appropriate period of time for somebody to attend a medical evaluation." CBR at 229. Counsel insisted that the exams were scheduled "too closely together," before adding, "I had previously cross-examined Dr. Lynch on at least two prior occasions, and so I was aware of his propensity, so to speak." *Id.* Judge Friedman asked, "But your basis is that there were too many [examinations] too close together?" *Id.* Suarez's counsel responded, "Too close together. And particularly Dr. Lynch. I had some objections to him

specifically, but I didn't state them. I thought that was something I could benefit from by the scheduling of the exams too close together." *Id.*

After the hearing, Judge Friedman concluded, "Without other factors, scheduling this [examination] three or four months after the most recent examination is not good cause for failing to attend. Even if this could be considered a valid reason for not attending, it does not establish good cause when balanced against the self-insured employer's interests," which included resolving conflicting medical opinions in order to administer and possibly close the claim. CBR at 36. Judge Friedman found, "Alfredo Suarez failed to attend the medical examination scheduled for May 16, 2015, because he had attended prior medical examinations and the May 16, 2015 examination was scheduled for less than four months after the most recent prior examination." CBR at 37. He concluded that "Suarez did not have good cause within the meaning of RCW 51.32.110 for failing to comply" and that the Department's order was correct. *Id.*

Suarez petitioned the Board for review. The Board granted review and issued a decision and order adopting Judge Friedman's proposed decision and order, concluding it was "supported by the preponderance of the evidence and . . . correct as a matter of law." CBR at 4.

On appeal to the superior court, Suarez argued that Judge Friedman and the Board failed to consider testimony expressing concerns about Dr. Lynch's "propensity to favor the employer on . . . medical issues," especially within the context of Suarez's other pending appeal. Am. Verbatim Report of Proceedings (Oct. 1, 2020) (VRP) at 4. He further argued that statutory language requiring workers to submit to examinations "'from time to time' has to be considered in the context of what is reasonable," and he submitted that "'time to time' would be every six months to a year, and in this case the employer was pushing it." VRP at 8-9 (quoting former RCW

51.32.110(1) (1997)).[2] He argued that good cause was further supported by the prior lack of notice to counsel about the November 2014 exam, Suarez's lack of sophistication due to his educational background and language barriers, and the fact that Dr. Thompson had already provided a conclusive opinion on the shoulder condition.

The superior court concluded, "Viewed in its entirety, the evidence reflects that the principal reason identified by Suarez for failing to attend Dr. Lynch's [examination] on May 16, 2015 was that it was too close to the previous one." Clerk's Papers (CP) at 43. "The record does not clearly reflect . . . that Suarez's argument was based on . . . four factors rather than the timing of the examinations." *Id.* The superior court acknowledged that Suarez's counsel had mentioned he was "aware of [Lynch's] propensity" and suggested that Lynch's testimony tended to favor employers, but the court concluded it was "clear from the transcript that Judge Friedman clarified that the basis for Suarez'[s] refusal to attend . . . was that it was too close to the prior examination." CP at 42.

The superior court found that "Suarez's attorney objected . . . on the basis that [the May 2015 examination] was scheduled only four months after a prior independent medical examination;" that prior to the suspension, "Suarez was given the opportunity to explain his reasons for not attending;" and that "Suarez did not have good cause for failing to attend." Suppl. Clerk's Papers (SCP) at 61-62. It concluded that "[u]nder RCW 51.32.110 and RCW 51.36.070, Mr. Suarez was required to submit to an examination by a physician selected by the self-insured employer" and that "Suarez did not have good cause within the meaning of RCW 51.32.110 for

---

[2] The legislature amended RCW 51.32.110 in 2020 and deleted the phrase "from time to time." ENGROSSED SUBSTITUTE S.B. 6440, 66th Leg., Reg. Sess. (Wash. 2020).

failing to comply." SCP at 62-63. It concluded that the Board's order was correct and affirmed.

Suarez appeals the superior court's order.

ANALYSIS

GOOD CAUSE FOR FAILING TO ATTEND THE MAY 2015 EXAMINATION

Suarez acknowledges that he has a general obligation to attend medical examinations requested by the claim administrator for the self-insured employer, but he argues that his "obligation is tempered by what is reasonable under the facts of the particular case." Br. of Appellant at 15. Suarez claims he had good cause not to attend the May 2015 examination with Dr. Lynch because he "had already attended two medical evaluations within the last six months" and the scheduled examination was with "another orthopedic surgeon." *Id.* We disagree.

A.      Standard of Review

On appeal from the Board to the superior court, the superior court considers de novo the evidence and testimony that was presented to the Board. RCW 51.52.115. The Board's findings and decision are "prima facie correct," and the party challenging the decision bears the burden of proof. *Id.* The superior court may only "'substitute its own findings and decision for the Board's if it finds, from a fair preponderance of credible evidence, that the Board's findings and decisions are incorrect.'" *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998) (internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)). If the Board "has acted within its power and has correctly construed the law and found the facts," the superior court will affirm. RCW 51.52.115.

On appeal to this court, we review only whether the superior court's factual findings are supported by substantial evidence and whether its conclusions of law flow from its findings.

*Hendrickson v. Dep't of Labor & Indus.*, 2 Wn. App. 2d 343, 351, 409 P.3d 1162 (2018). Evidence is substantial if it is "'"sufficient to persuade a rational, fair-minded person that the finding is true."'" *Id.* at 351-52 (quoting *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012)). "We review the record in the light most favorable to the party who prevailed in superior court," and we do not reweigh the evidence. *Id.* at 352. Unchallenged findings of fact become "verities on appeal." *Dep't of Labor & Indus. v. Shirley*, 171 Wn. App. 870, 879, 288 P.3d 390 (2012). The good cause determination is a mixed question of fact and law because the "ultimate determination of good cause is a legal conclusion, based on subsidiary findings by the trier of fact." *Romo*, 92 Wn. App. at 357.

B.     Requirements under the Industrial Insurance Act

Any worker who is entitled to receive benefits under the Industrial Insurance Act, title 51 RCW, "shall, if requested by the department or self-insurer, submit [themselves] for medical examination, at a place reasonably convenient for the worker." RCW 51.32.110(1); *see also* RCW 51.36.070(1)(a) (requiring the worker to submit to an examination whenever the Department or self-insurer "deems it necessary" to make a decision, resolve an issue, or evaluate the worker's disability or work restrictions). When this case was before the Board, former RCW 51.32.110(1) only required the worker to submit to a medical examination "from time to time."

The Department or the self-insurer may request an examination for a number of reasons, including to evaluate what conditions are "related to the claimed industrial injury" and to "[e]stablish when the accepted industrial injury . . . has reached maximum medical improvement." WAC 296-23-307(3), (5). The Department or self-insurer may request an examination to "resolve conflicting medical opinions." *Romo*, 92 Wn. App. at 358.

The Department may "reduce, suspend or deny benefits when a worker (or worker's representative) is noncooperative with the management of the claim." WAC 296-14-410(1). Noncooperation is behavior "which obstructs and/or delays the department or self-insurer from reaching a timely resolution of the claim." WAC 296-14-410(2). It includes "[n]ot attending or cooperating with medical examinations" requested by the self-insurer. WAC 296-14-410(2)(a)(i); *see also* RCW 51.32.110(2) ("If the worker refuses to submit to medical examination, . . . the department or the self-insurer upon approval by the department, with notice to the worker may suspend any further action on any claim . . . and reduce, suspend, or deny any compensation for such period.").

Before suspending or denying benefits, the Department or self-insurer must "send a letter to the worker (or the worker's representative) advising that benefits may be suspended and asking for an explanation for the noncooperation." WAC 296-14-410(4)(a). "This written response should include the reason(s) the worker has for not cooperating." WAC 296-14-410(4)(b). The worker has the burden of justifying their refusal to appear. *Andersen v. Dep't of Labor & Indus.*, 93 Wn. App. 60, 64, 967 P.2d 11 (1998). The Department "shall not . . . reduce, suspend, or deny any compensation if a worker has good cause for refusing to submit to . . . any examination." RCW 51.32.110(2)(a).

In *Romo*, Division Three recognized that the good cause determination should balance "the worker's individual circumstances and the Department's interests in requiring the examination." 92 Wn. App. at 357. Thus, "a worker would have good cause to refuse to attend a truly unwarranted examination." *Id.* at 356. And it is relevant if the worker has good reason to suspect the Department or self-insurer's motives for requesting another examination or "to doubt the fairness of the

examination." *Id.* at 359. But "frustration alone," or an unsupported belief that the examinations are "redundant and unnecessary," is insufficient. *Id.* at 358. Balancing the worker's and the Department's or self-insurer's interests is the "fact[]finder's obligation." *Id.* at 357 n.1.

C.      Failure to Attend the May 2015 Examination

Suarez challenges the superior court's conclusions that "[u]nder RCW 51.32.110 and RCW 51.36.070, Mr. Suarez was required to submit to an examination by a physician selected by the self-insured employer" and that "Suarez did not have good cause within the meaning of RCW 51.32.110 for failing to comply." SCP at 62-63. He challenges the finding that "Suarez did not have good cause for failing to attend." SCP at 62. He does not challenge the factual finding that "Suarez's attorney objected . . . on the basis that [the May 2015 examination] was scheduled only four months after a prior independent medical examination" or the finding that prior to the suspension, "Suarez was given the opportunity to explain his reasons for not attending." SCP at 61-62. These unchallenged findings are verities on appeal. *Shirley*, 171 Wn. App. at 879.

Suarez alleges the superior court failed to "correctly balance" his interests and Masco's interests and to "give sufficient or equal weight to the exhibits admitted," which included all of Suarez's attorney's letters. Br. of Appellant at 2-3. It is true that the fact finder must balance the parties' interests, *Romo*, 92 Wn. App. at 357 n.1, but we do not reweigh the evidence on appeal, *Hendrickson*, 2 Wn. App. 2d at 352. We view the evidence in the light most favorable to the party who prevailed in superior court and ask only whether substantial evidence supports the superior court's findings. *Id.* at 351-52.

Substantial evidence supports the superior court's finding that Suarez did not have good cause to fail to attend the May 2015 examination. When Suarez's counsel wrote that Suarez would

not attend, he stated, "There is no reason to reschedule [another] medical evaluation less than four months [after] the previous one." CBR at 235. When given the opportunity to explain his reasons for noncooperation pursuant to WAC 296-14-410(4)(b), he again stated, Suarez "just had a medical evaluation at the request of [Masco] less than four months ago, and it did not seem reasonable that he have another one so soon." CBR at 239.

Suarez's counsel presented some evidence that he was concerned about Dr. Lynch's potential bias in favor of employers, especially because Suarez had another pending appeal where independent medical examiners could be called to testify. He told the Department's penalty adjudicator that it "looks like overkill . . . to have another orthopedic surgeon available to testify," and he was concerned about Masco "piling on" witnesses. CBR at 245, 273. He also testified during the evidentiary hearing that he had some specific, unstated objections to Dr. Lynch.

But Suarez's counsel also told the Department's claim adjudicator, "when the notice came in" for this examination, "it had only been three months since the last medical evaluation, and I objected on that basis." CBR at 242. And he testified during the appeal of the no-show fee assessment that "the basis for objection" was that Suarez "just had an examination within a four-month period." CBR at 270-71. When asked to clarify the basis for the objection, Suarez's counsel stated, "So that was a third examination within a six-month period of time, and I didn't think it was reasonable." CBR at 275. Then, during the evidentiary hearing in 2019, Suarez's counsel again testified that the primary basis for his objection was that the examinations were "[t]oo close together." CBR at 229. Suarez's counsel's consistent statements about the reason for his objection were sufficient to persuade a fair-minded, rational person that Suarez objected because the May 2015 examination was scheduled four months after a prior examination. Moreover, the superior

14

court's order recognized that Suarez's counsel had referenced Dr. Lynch's "propensity," or bias, indicating that the court did not neglect to weigh this evidence in reaching its final determination. CP at 42. We do not reweigh it on appeal.

The superior court's legal conclusions flow from this finding. Under RCW 51.32.110(1) and RCW 51.36.070(1)(a), Suarez was required to submit to a medical examination "requested by the . . . self-insurer" if the self-insurer "deem[ed] it necessary" to resolve an issue. Although former RCW 51.32.110(1) only required the worker to submit to an examination "from time to time," Suarez has not established that an examination four months after the previous one was more often than "from time to time."

Masco explained why the examination was warranted. The two orthopedic surgeons who provided independent medical examinations gave conflicting opinions on whether Suarez's right shoulder condition was related to his industrial injury, and the neurosurgeon who provided an examination less than four months before had deferred back to the orthopedic surgeons on this question. Thus, another examination was reasonably necessary to resolve conflicting medical opinions. And the May 2015 examination was scheduled for six months after the last *orthopedic surgeon* examination. Suarez was required to submit to the examination, and he did not establish good cause for failing to do so.

Suarez raises additional arguments based on specific factors that Division Three has identified as relevant to the good cause balancing inquiry. *See Romo*, 92 Wn. App. at 356 (considering in part the worker's "'sophistication . . . [and] expectation of a fair and independent medical evaluation'" (quoting *In re Edwards*, No. 90 6072, at 3 (Bd. of Indus. Ins. Appeals June 4, 1992), http://www.biia.wa.gov/DO/906072_ORD_19920604_DO.pdf)). Suarez is correct that

15

the superior court overlooked testimony that Suarez left school at an early age. But we reject his argument that Suarez's lack of sophistication, as well as Suarez's attorney's doubts about Dr. Lynch's objectivity, should have been given more weight. The balancing of these factors is a "fact[]finder's obligation," *Romo*, 92 Wn. App. at 357 n.1, and we decline to rebalance them on appeal. We affirm the superior court's order.

Masco also argues that Suarez's claims are precluded by res judicata because the Board found that Suarez failed to show good cause in its 2016 review of the no-show fee assessment and Suarez did not appeal this order. Because the superior court correctly decided in Masco's favor on the merits, we do not reach Masco's res judicata argument.

## ATTORNEY FEES

Suarez requests attorney fees under RCW 51.52.130(1). RCW 51.52.130(1) provides for reasonable attorney fees if, on appeal from a Board decision, the Board's "decision and order is reversed or modified and additional relief is granted to a worker." We affirm the superior court's order affirming the Board's decision and hold that Suarez is not entitled to relief, so Suarez is not entitled to attorney fees under RCW 51.52.130(1).

## CONCLUSION

We affirm the superior court's order affirming the Board's decision and order.

No. 55377-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Worswick, J.

Cruser, J.